C. P. WILKERSON V. J. SCHOONMAKER ET AL.

No. 6664.

1. **Judgments—Presumption of Jurisdiction.**—A domestic judgment of a court of general jurisdiction upon a subject matter within the ordinary scope of its power is entitled to such absolute verity that in a collateral action, even where the record is silent as to notice, the presumption, when not contradicted by the record itself, that the court had jurisdiction of the person also is so conclusive that evidence *aliunde* will not be admitted to contradict it.

2. **Same—Justice Courts.**—It is not necessary for everything to affirmatively appear in the record of a justice's judgment which is required to exist to confer upon it jurisdiction with regard to the person or to the subject matter. But the authorities do not hold that the rule applied to other courts of general jurisdiction apply to Justice Courts; that where the record is silent on the subject jurisdiction will be conclusively presumed, and no evidence to the contrary will be heard.

3. **Same—Justice Judgment Attacked.**—See facts where a judgment in a Justice Court was attacked, the record not showing service, by disproving personal service.

4. **Name of Grantee in Deed.**—A deed made to a married woman by her name previous to her marriage, her identity being shown, is valid to convey the land.

APPEAL from Milam. Tried below before Hon. John N. Henderson. The opinion contains a statement.

*W. M. McGregor* and *E. H. Lott,* for appellant.—1. The judgment of the Justice Court could not be collaterally attacked, but the remedy was by injunction within one year from the date of judgment. Rev. Stats., art. 2875; Hamblen v. Knight, 60 Texas, 36; Dunlap v. Southerlin, 63 Texas, 38; Williams v. Ball, 52 Texas, 603.

2. The evidence was not sufficient to show collusion and fraud in obtaining said judgment or that the judgment was not just and properly rendered for a debt justly due, even though the attack might have been made by injunction in a direct proceeding.

*Hefley & Wallace,* for appellees.

HENRY, ASSOCIATE JUSTICE.—Appellant commenced this suit in the form of an action of trespass to try title to recover 205 acres of land.

The evidence shows that the land was conveyed to Mary A. Rudicil, the wife of W. A. Rudicil. She for the purpose of enabling her son J. A. Rudicil to sell it, and for no other consideration, made him a deed for the land. Subsequently she married J. Schoonmaker. On September 4, 1883, J. A. Rudicil reconveyed the land to Mary A. Rudicil in that name instead of her then name, Schoonmaker. This deed was held by the grantee but not filed for record until the hour of 12:30 a. m. on the 5th day of February, 1884. Appellant holding a note for $50 executed by J. A. Rudicil and Mary A. Rudicil to McGregor & Lott and endorsed by them, brought suit upon it against all of said parties in a Justice Court. On the 26th day of No-

vember, 1883, judgment by default for the amount of the note was rendered against J. A. Rudicil and Mary A. Schoonmaker and her husband John Schoonmaker. Upon this judgment an execution was issued and the land in controversy was levied upon as the property of J. A. Rudicil, and his interest in it was sold under the levy on the 5th day of February, 1884, to the appellant C. P. Wilkerson, and a deed for it was made to him by the officer who made the sale.

This cause was tried without a jury, and judgment was rendered in favor of the defendants.

Appellant assigns errors as follows:

"1.   The court erred in allowing the judgment of the justice of the peace to be attacked by a collateral proceeding.

"2.   The court erred in permitting the introduction of a deed purporting to have been executed by J. A. Rudicil to M. A. Rudicil as evidence in the cause, because there was no precedent for its introduction, and because said deed was not executed, nor did it invest title in the land in M. A. Schoonmaker, a party to this cause, but conveyed a certain tract of land to M. A. Rudicil, who was then, so far as the pleading went, a stranger to this cause, it not being alleged in any of plaintiffs' pleadings nor shown properly in evidence that Mary Schoonmaker and Mary Rudicil were one and the same person; and because the evidence showed a fraud in the execution of this deed to his mother by J. A. Rudicil long after and within his knowledge of her said change of name by marriage to John Schoonmaker; and because there was no execution of a deed valid and for a valuable consideration by J. A. Rudicil to his mother M. A. Schoonmaker; and because the circumstances show that the said deed was made to defeat said execution and judgment in favor of said Wilkerson and in fraud of his rights."

The judgment of the justice of the peace contains no recital with regard to the service of citation upon J. A. Rudicil. Upon the question of notice to him of the pendency of the suit it is silent, neither showing that he did or that he did not have such notice.

The return on the original citation was introduced in evidence, and shows that he was not served with that. He testified that he was never notified of the pendency of the suit.

R. Lyles, an attorney, testified that he was present at the Justice Court when the judgment was rendered, and that J. A. Rudicil did not appear by attorney or otherwise. He further testified that he examined the papers and found a citation to J. A. Rudicil, Mary A. Rudicil, W. M. McGregor, and E. H. Lott; that this citation was returned executed as to Mary A. Rudicil and as to J. A. Rudicil "not found;" that he informed McGregor there was no service on J. A. Rudicil, and that McGregor then drafted a judgment which the justice of the peace entered up in the case; that he examined the papers at the request of McGregor to ascertain if

judgment by default could be properly taken against J. A. Rudicil and Mary A. Rudicil.

McGregor testified as follows: "I think I examined the papers in the case. My recollection is that there was service perfected on J. A. Rudicil. There was one citation from San Antonio to J. A. Rudicil returned 'not found.' There was one to San Antonio returned served. It is only my impression now and simply as an opinion that there was service."

The justice of the peace who rendered the judgment testified that his memory was that a citation issued to San Antonio for J. A. Rudicil was served; "remember sending citation out there and that is all—don't re-remember its having been returned."

By repeated decisions it has been announced by this court "that a domestic judgment of a court of general jurisdiction upon a subject matter within the ordinary scope of its power and proceedings is entitled to such absolute verity that in a collateral action, even where the record is silent as to notice, the presumption, when not contradicted by the record itself, that the court had jurisdiction of the person also is so conclusive that evidence *aliunde* will not be admitted to contradict it." Fitch v. Boyer, 51 Texas, 344; Tennell v. Breedlove, 54 Texas, 540; Lawler v. White, 27 Texas, 250.

In Murchison v. White, 54 Texas, 82, it is said: "In collateral proceedings the only contingency in which the judgment of a domestic court of general jurisdiction can be questioned is where the record shows affirmatively that its jurisdiction did not attach in the particular case." This rule is applied to the parties to the proceeding and their privies, but not to strangers.

In cases where the judgment entry is silent upon the question of jurisdiction the entire record may be looked to, and if it affirmatively appears therefrom that it did not exist the judgment must be held void in collateral as well as in other proceedings and between all persons. Hearn v. Camp, 18 Texas, 546; Mills v. Herndon, 60 Texas, 359, 360; Brockenborough v. Melton, 55 Texas, 503.

In the case of Hearn v. Camp, 18 Texas, 546, the jurisdiction was defeated by recitals contained in the petition for letters of administration and in the inventory afterwards filed.

The question now before us with regard to the judgment of a justice of the peace was considered by this court in the case of Williams v. Ball. 52 Texas, 603. In that case, as in this, the judgment entry was silent upon the question of notice to the defendant, and he testified that he was never served.

In the opinion the case of Bumpus v. Fisher was referred to as holding that "it is the tendency of American decisions to liberalize the rule of construction with reference to the inferior courts;" and that "the rule with respect to courts of limited jurisdiction that everything must appear

on the record strictly and affirmatively which will give 'them jurisdiction to hear and determine is rapidly giving way by the application to our courts, as they are actually constituted, of the same principles which originally formed the rule with reference to their own courts in England."

With regard to titles depending upon judgments of Justice Courts it is further said in the case of Williams v. Ball, *supra,* that "to hold these titles void unless the record shows affirmatively all the necessary facts would virtually defeat many of them, involve the country in litigation, and would be contrary to repeated rulings of this court which hold that such proceedings should be liberally construed. Judgments of justices of the peace when apparently within the ordinary scope of their power and jurisdiction can not, as was sought to be done in this case, be collaterally attacked as being void for the reason that they do not show affirmatively all the facts necessary to have given the court jurisdiction. If in such cases generally the testimony of the defendant be admissible—which we do not now concede—to prove that in fact he was not served with process, yet in the case under consideration we can not say that the court erred in not holding it sufficient to overturn the presumption in favor of the regularity of the judgment."

These cases are authority for holding that it is not necessary for everything to affirmatively appear in the record of a justice's judgment which is required to exist to confer upon them jurisdiction with regard to the person or to the subject matter. But they do not go to the opposite extreme and hold that the rule applied to other courts of general jurisdiction that where the record is silent on the subject jurisdiction will be conclusively presumed and no evidence to the contrary will be heard.

While the opinion in the case of Williams v. Ball contains expressions capable of being construed as deciding that the courts of justices of the peace should under our Constitution be treated as courts of general jurisdiction, we do not think it was intended to decide more than that in the absence of recitals every presumption in favor of their validity must be indulged and that they will not be held void merely because every fact necessary to give the court jurisdiction does not affirmatively appear in the record. Evidence *aliunde* was heard both in the Bumpas v. Fisher and in the Williams v. Ball cases, and it was not decided to be inadmissible in either case.

Even when Justice Courts are recognized to be courts of general jurisdiction, we think that the fact that all proceedings in them are conducted orally justifies some distinction in this respect between them and other courts of general jurisdiction in which the proceedings are required to be in writing and which writings may be referred to on the question of jurisdiction. We do not think that the presumption in favor of the jurisdiction of a justice of the peace in all cases, even when the record is silent on the subject, should be lightly treated or disregarded, especially when

the judgment has long been acquiesced in and when the circumstances indicate that the party against whom it was rendered either had notice of it or by the use of reasonable diligence might have acquired such notice.

In the case before us the transaction was a recent one, and we think that evidence tending to show that the defendant was never served with notice was properly admitted.

With regard to the second objection, notwithstanding the deed was made to Mrs. Schoonmaker by her former name of Rudicil, the evidence very clearly explains that it was intended for her, and we do not think that the deed should have been excluded for that or any other objection made to it.

The judgment is affirmed.

*Affirmed.*

Delivered June 13, 1890.