EMMA CULMELL ET AL. V. JESSE T. BORROUM ET AL.

Delivered April 29, 1896.

1. **Legal or Equitable Title—Transfer of Land Certificate and Subsequent Patent to Original Grantee.**

Where the original grantee of a land certificate, whether before or after the location of the land, transfers the certificate, and the patent afterwards issues to such original grantee, the purchaser of the certificate has but an equitable title to the land; but if the conveyance be of the land itself, after its location, the subsequent issuance of the patent in the name of such original grantee will not divest the purchaser of the legal title.

2. **Quit Claim Deed—Bona Fide Purchaser.**

One claiming under a quit claim deed is a bona fide purchaser only to the extent of the interest owned by his grantor at the time of the conveyance.

3. **Same—Conveyance of "All Interest" a Quit Claim—Warranty of Title.**

A deed of land whereby the grantor "bargains and sells * * * all my right, title and interest in" the tract, with full warranty of "the title of said land," is a quit claim.

4. **Laches and Stale Demand not Applicable, When—Repudiation—Hostile Act.**

Where a land certificate is sold by the original grantee before its location, the subsequent taking of the patent to the land in his own name by such vendor is not such an act of hostility to the rights of the purchaser as will put the rule of laches and stale demand in operation against the purchaser's equitable title to the land.

APPEAL from Bee. Tried below before Hon. S. F. GRIMES.

*A. J. Parker* and *Graves & Wilson*, for appellants.—1. When the original grantee of a certificate sells the same by a deed in writing which recites that the grantee is authorized to locate same and to sell the land so located, and warrants to such purchaser of the certificate all the rights conveyed, such purchaser gets a legal title (by estoppel), and such legal title vests as soon as the patent issues. Satterwhite v. Rosser, 61 Texas, 173; Johnson v. Newman, 43 Texas, 642.

2. A warranty clause of a deed is an independent obligation of the grantor and cannot enlarge the estate conveyed. Rogers v. Burchard, 34 Texas, 441; Harrison v. Boring, 44 Texas, 255; Richardson v. Levi, 67 Texas, 358; Reynolds v. Shaver, 27 S. W. Rep., 78, and the authorities there cited.

3. When the title, and not the land, is sold, the warranty clause refers only to the title or chance of the land, and does not warrant the land to the purchaser, and therefore the purchaser gets only a quit claim deed. Rev. Stats. (1879), art. 552; Richardson v. Levi, 67 Texas, 359; Reynolds v. Shaver, 27 S. W. Rep., 78, and the authorities there cited.

4. A deed which conveys only the right and interest of the grantor, who had previously conveyed same property, is a quit claim deed, and the purchaser under such deed will not be protected against a prior unrecorded deed. Rogers v. Burchard, 34 Texas, 441; Harrison v. Boring, 44 Texas, 260; Richardson v. Levi, 67 Texas, 359, and the au-

thorities there cited; Reynolds v. Shaver, 27 S. W. Rep., 78; Webb on
Record of Title, secs. 27, 183.

*Beasley & Flournoy*, for appellees.—1.   The plaintiffs claiming under
a transfer from Baker, of his bounty warrant made before its location,
had an equitable title to the land; the defendants claiming under a con-
veyance of the land from Baker made after the patent had issued to him,
had a legal title to the land.   Abernathy v. Stone, 81 Texas, 430;
Teague v. Henecke, 27 S. W. Rep., 1049; Johnson v. Newman, 43
Texas, 639; Wilson v. Simpson, 68 Texas, 306; 52 Texas, 391.

2.   The deed from Baker to Johnson is not a "quit claim" deed, but
is a conveyance of the land, and under it Johnson might be a bona fide
purchaser.   Laughlin v. Tips, 28 S. W. Rep., 551; Johnson v. New-
man, 43 Texas, 628; Garrett v. Christopher, 21 S. W. Rep., 67; Aber-
nathy v. Stone, 81 Texas, 430; Taylor v. Harrison, 47 Texas, 454; Har-
rison v. Boring, 44 Texas, 255; Lewis v. Terrell, 26 S. W. Rep., 754;
Lumber Co. v. Hancock, 70 Texas, 312; U. S. v. California Land Co.,
148 U. S., 31; Moille v. Sherwood, 148 U. S., 21.

3.   The claim of the plaintiffs is a stale demand.   Johnson v. New-
man, 43 Texas, 628; Abernathy v. Stone, 81 Texas, 430; 79 Texas, 1.

FLY, ASSOCIATE JUSTICE.—This appeal is the result of a judgment
against appellants in a suit instituted by them in the District Court of
Bee County, against appellees, to recover an undivided interest of 320
acres out of a 1280-acre survey, patented to Chas. Baker, and rent from
the same for two years preceding the institution of the suit.   Appellees
answered with a general demurrer, general denial and plea of not guilty.
The court tried the cause without a jury, and rendered judgment for
appellees.

It was admitted by all the parties that military warrant No. 2976 was
issued for 1280 acres of land to Chas. Baker in April, 1838, that it was
located on the land in controversy on June 4, 1839, and that a patent
was obtained in the name of Charles Baker in October, 1846.

On April 30, 1838, Charles Baker executed and delivered to William
W. Gant a transfer of the certificate above described as follows:

"REPUBLIC OF TEXAS, )
"Harrisburg County: }   "Know all men by these presents that I,
Charles Baker, for and in consideration of the sum of $200 to me in
hand paid, the receipt whereof is hereby acknowledged, have this day
bargained, sold, alienated and conveyed unto William W. Gant all my
right, title, claim and interest that I have in and to a certain military
bounty warrant for 1280 acres of land.   Number of warrant 2976, and
issued, etc., bearing date April 21, 1838, and I do hereby transfer and
invest in the said, his heirs and assigns all the rights and privileges that
are given me by the said warrant, and also authorize him or his legal
representatives to locate said warrant upon any lands subject to location,

and when located to enter upon and use and occupy the same at will, or to sell, alienate or donate the same; and I furthermore bind myself, my heirs and assigns to defend the right hereby conveyed, against all sales, frauds and incumbrances of what nature soever.

"In testimony whereof, I hereto affix my hand and seal, this the 30th day of April, 1838, in the presence of the subscribing witnesses."

This instrument was properly signed and acknowledged, and was recorded in Goliad County, December, 1853, where the land was situated at that time, and in Bee County July 14, 1876.

Appellant, Mrs. Emma Culmell, had a regular chain of title from Gant to the 320 acres of land sued for. Appellees also claimed from Charles Baker, through a deed made by him to J. H. Johnston, as follows:

"STATE OF TEXAS, }
"County of Red River: }    "Know all men by these presents that I, Charles Baker, of —————— county, have this day, for the consideration of $400 to me paid by James H. Johnston, of Red River County, the receipt whereof is hereby acknowledged, have bargained and sold unto the said James H. Johnston all my right, title and interest in and to one certain tract of land located by my bounty land warrant, granted to me for 1280 acres of land, and as follows:

"In Goliad County, on the waters of the Medio, about 28 miles above the crossing of the road from Goliad to Laredo, beginning [giving field notes as contained in the patent]. To have and to hold unto him, the said Johnston, his heirs and assigns, forever, and hereby bind my heirs, executors and administrators to forever warrant the title of said land to the said Johnston, his heirs and assigns forever, against all persons claiming the same legally in any way whatever.

"Given under my hand and seal, this November 29, 1846."

This deed was acknowledged and recorded in Bee County, May 23, 1877. Appellees had a regular chain of title from Johnston. Appellants have never been in possession of the land or paid taxes on the same. Appellees had been in actual, adverse, continuous possession of the land, claiming the same and paying taxes on the same, for nine or ten years. Emma Culmell and her husband, John F. Culmell, appellants, were married in 1876, and had been continuously married to the time this suit was instituted. The land was the separate property of Mrs. Culmell. The first assignment presents as error the action of the trial court in holding that the sale of the certificate before location conveyed only an equitable and not a legal title.

The transfer of the certificate was made by Baker to Gant before the location; and after the patent was granted, Baker quit claimed his title to the land to Johnston. The sale of the certificate to Gant transferred to him the equitable title to the land that was afterwards located by virtue of it, and when the patent was afterwards issued in the name of Charles Baker, to whom the certificate was granted and who sold it to Gant, the legal title was vested in Baker, and his conveyance to John-

ston after the patent was granted placed the legal title to the land in him. Keyes v. Railway, 50 Texas, 174; Herman v. Reynolds, 52 Texas, 391; Goode v. Jasper, 71 Texas, 51; Abernathy v. Stone, 81 Texas, 430.

This would be true whether the transfer of the certificate took place before or after the land was located. Simpson v. Chapman, 45 Texas, 566; Hearne v. Gillett, 62 Texas, 25; Lewis v. Johnson, 68 Texas, 448; Thompson v. Langdon, 87 Texas, 254; Hume v. Ware, 87 Texas, 380.

A distinction is drawn between the transfer of the land certificate and a conveyance of the land itself after the certificate had been located; the transfer in the first instance giving only an equitable title, and the conveyance of land after location giving such title that it will at once become a legal title if the patent is issued in the name of the original grantee. Satterwhile v. Rosser, 61 Texas, 173; Adams v. House, 61 Texas, 640; Abernathy v. Stone, 81 Texas, 430.

Appellees claimed, and in order to support their claim should have established, that Johnston was a bona fide purchaser of the land in controversy without notice of the transfer of the certificate to Gant by Charles Baker.

To maintain the character of a bona fide purchaser without notice for Johnston, it was essential for appellees to show that he received a deed to the land itself, and not a mere chance of title, for it is well settled that a party receiving a quit claim deed to land cannot be deemed a bona fide purchaser of any greater interest therein than his grantor had at the time of the execution of the deed. Harrison v. Boring, 44 Texas, 255; Taylor v. Harrison, 47 Texas, 460; Richardson v. Levi, 67 Texas, 359; Laughlin v. Tips, 8 Texas Civ. App., 649.

Much has been written on what it takes to constitute an instrument a conveyance of the land itself, or merely a release of such title, however imperfect, as may be lodged in the grantor, but the matter, it would seem, resolves itself into the task of arriving at the intention of the parties. It has been held in this State that, ''While a deed may be so plain in its terms as to require the court to construe it to be a quit claim in one case, or an absolute conveyance of the land in another case, still its wording may be such as to raise a question whether it is the one or the other, and in that event the circumstances under which it is made and purposes for which it is made may be considered to fix its true character as being one or the other.'' Harrison v. Boring, 44 Texas, 255; Taylor v. Harrison, 47 Texas, 460.

If the deed, no matter how expressed, shows on the part of Baker an intention to convey the land itself to Johnston, then it was not a quit claim, and it would form the basis for the claim of innocent purchaser without notice; but if it conveyed only the title that Baker may have had in the land, Johnston could not claim such character, but he is charged with notice of all the risks attending such a purchase.

The deed from Baker to Johnston conveyed ''all my right, title and interest in and to one certain tract of land'' which is followed by a description of the land, and the habendum clause, ''To have and to hold

unto him, the said Johnston, his heirs and assigns forever," which evidently refers back to what was conveyed, namely: "right, title and interest." The warranty is of the "title of said land." The warranty clause, however, forms no part of the conveyance, but is looked upon as a separate contract between the grantor and grantee. The use of the words "bargain and sell" do not alter the character of the instrument. Richardson v. Levi, 67 Texas, 360; Threadgill v. Bickerstaff, 87 Texas, 520.

We conclude, therefore, that the deed from Baker to Johnston was a quit claim, and not an absolute conveyance of the land. We have seen no case in which instruments containing similar terms to those in the deed in question have been construed to be other than quit claim deeds, In all of the authorities cited by appellees, there were words in the instruments held to be absolute conveyances, that indicated an intention to convey the land itself. There are no words in the deed of Baker to Johnston that would indicate that his intention was to convey anything but a mere chance of title.

It is urged by appellees that the demand of appellants is stale, but we are of the opinion that this contention can not be sustained. The property being the separate estate of Mrs. Culmell, and the deed of Baker to Johnston not being recorded until 1877, at which time Mrs. Culmell was a married woman and has continuously been married since, the doctrine of stale demand can have no application to her, unless it arises from laches before that time. Bremer v. Deffenbaugh, 60 Texas, 151; Merrill v. Roberts, 64 Texas, 443; Hill v. Moore, 65 Texas, 335. Reed v. West, 47 Texas, 240.

Johnston did not record his deed until 1877, when Mrs. Culmell was laboring under the disability of coverture, and in considering the matter of stale demand, Johnston and those claiming from him must be placed in the same position that Baker would occupy were the suit between him and Gant.

To have started the running of time so that it culminated in rendering the claim of Gant or his vendees stale, there must have been some hostile act upon the part of some one setting up an adverse claim to the land.

The acts claimed as starting the running of time against Gant are, the location of the certificate and the patenting of the land. For the location of the certificate to have been an act hostile to appellants' claim, it must have been done by Baker or some one for him. To have done this he must have had the certificate in his possession, but of this we have no evidence. We cannot presume it, but on the other hand, in view of the bill of sale, it would be more reasonable to presume that the certificate was delivered to Gant and was located by him. Stale demand was a defense that arose in favor of appellees under their plea of not guilty, and the burden rested upon them of establishing such hostile acts upon the part of Baker as to start time to running against the equities of Gant. There is no proof to sustain the proposition that the

certificate was located by Baker. The only proof is that the "warrant was located on the tract of land in controversy June 4, 1839." Who located it? Gant owned it, and the natural presumption would be that he located it. We cannot at least presume that Baker did not deliver the certificate to Gant, and that he, the year after he had sold it, located it. Then the only other act that can be argued to be hostile to Gant's claim was the issuance of the patent in the name of Baker. This is the proposition upon which the plea of stale demand must rest. We will briefly review the authorities cited by appellees, as well as others that might appear to sustain their position.

In the case of Johnson v. Newman, 43 Texas, 628, Mitchell sold to Jack his right to a league and labor of land before the certificate for the same was issued, and before the congress of the republic had provided a method for the ascertainment of such rights under the constitution. Mitchell afterwards secured the certificate in his own name and sold and delivered it to Kirchoffer, who located it on the land in controversy. After the location of the certificate, Mitchell made a warranty deed to Kirchoffer, conveying to him the league and labor of land. It was held that the act of Mitchell in procuring the certificate to be issued in his own name and selling it to Kirchoffer was a repudiation of the contract with Jack, and the issuance of the patent would charge the vendees of Jack with notice of the repudiation. The certificate was never in possession of Jack, and it can be readily seen that the issuance of the patent would notify him that Mitchell had located the land and was claiming it.

The case of Abernathy v. Stone, 81 Texas, 430, was one in which the original owner of a land certificate, after a portion of it had been located on land in McLennan County, made a deed to a part of the land so located. Afterwards the owner of the certificate floated it and relocated it on other land in Falls County. The court held that the floating of the certificate placed the grantee of the land from which it had been lifted in the same position to the land upon which the relocation took place, as he would have been had there been a transfer of a part of the certificate to him, and held that the floating of the certificate by the original owner and its relocation was a repudiation of the contract of sale, and "from the beginning hostile to any right of the appellant in either the certificate or the land."

In the case of Howard v. Stubblefield, 79 Texas, 1, which comes nearer to sustaining the contention than any cited by appellees, or that can be found in the Texas decisions, Evans, the original owner of the certificate, conveyed to Howard, in June, 1847, a one-third interest in his certificate, and conferred on him the right to locate the same and obtain a patent therefor in his own name, and in 1853 Evans located the whole certificate in his name, and also obtained a patent to the same in 1858. It was held, "If the location of the entire certificate by Evans in his own name was not an act hostile to Howard's claim, the acceptance of the patent by him certainly was, and Howard acquiesced in it, took no steps to avoid it and assert his claim, up to his death, eight

years thereafter." This case goes further than any brought to our notice, but even in it, there were acts shown on the part of the original owner in the location of the certificate and obtaining the patent which do not appear in the case before us. In the last cited case, the decisions in Carlisle v. Hart, 27 Texas, 350; Fuller v. Coddington, 74 Texas, 334, and Frost v. Wolf, 77 Texas, 455, are cited as sustaining its doctrine. In the Carlisle-Hart case it appeared that Mary Hart had obtained a concession of a league of land as a colonist, but had died before final title was issued to her, leaving as her heirs her son Timothy and several other children. Timothy, the only son, applied for and obtained a title to said league of land in his own name as heir of Mary Hart. The court very properly held that this action was an assertion of title adverse to the other heirs. In the Fuller-Coddington case the court does not pass upon the question of stale demand, but rests the decision on the ground that the proof adduced in favor of the equitable title was not sufficient to prevail against a clear legal title. In that case the proof showed that the land was located by those having the legal title. In the Frost-Wolf case the interest in the land certificate was given for services in surveying and locating the certificate, which service the evidence did not show that he performed, and during the lifetime of the original owner of the certificate he set up no claim to the land nor paid taxes on it. The court held: "The presumption under such facts ought to be that the contract between Aiken and Frost was in some manner rescinded, or that the latter did nothing to entitle him to any part of the land, and this presents just the case in which the defense of stale claim should be recognized." A review of the cases shows that in no case has the mere fact of the patent being issued in the name of original grantee been held such an act of hostility as to cause time to begin to run, unless it be in the Howard-Stubblefield case.

If the Howard-Stubblefield case holds that the mere issuance of a patent in the name of the original grantee is an act of hostility to the equitable claim of him to whom the certificate had been transferred, it would seem that it is in conflict with the case of Robertson v. Dubose, 76 Texas, 1. The facts in that case are very similar to those in the case we are considering, the only material difference being that it was affirmatively shown that the owner of the equitable title had located the certificate, and that the suit was brought by the holder of the legal title. Speaking on the question of stale demand, the court held: "When the patent in this case issued to Caleb Holloway, in the year 1873, he was invested with the legal title in trust and for the benefit of his vendee, Jesse Walling. He did nothing to repudiate the trust, or that was inconsistent with the rights of Walling, until he sold the land to appellant in 1887." In that case, as in this, neither party was in actual possession of the land, and the legal title was conveyed in that case, as in this, by quit claim deed. Says the court: "There being no repudiation of the trust until this sale, we think the doctrine of laches or stale claim had no application until then, and even then the nature of the

transaction was not such as to address itself to the favorable considera-
tion of a court of equity, to which the pleading and charges under con-
sideration are addressed."

The distinction between cases like the one at bar and those in which
a part of a land certificate is given for service in locating it is sought to
be drawn in the Howard-Stubblefield case, it being held that in the lat-
ter case, when the patent is taken in the name of the original grantee,
he holds the legal title to the extent of the locator's interest in trust
for him.    The distinction is not recognized in the Robertson-Dubose
case, but on the other hand cases involving locators' interests and some
of the identical ones that are attempted to be explained away by the
Howard-Stubblefield case are cited as sustaining the opinion in the
former case.

If the original grantee, when invested with the legal title by a patent
in a case in which a locative interest is held, is to be deemed to be hold-
ing to the extent of the interest in trust for some one to whom it has
been cohtracted, and limitation will not begin to run until the trust is
repudiated by possession, sale or some other adverse act, we can see no
reason why the doctrine would not apply when the whole of the land is
held in trust.    We are of the opinion that the fact of the patent being
issued in the name of Baker, the party to whom the certificate was issued,
was not a hostile act that would start limitation, but that there must
have been some act, with notice of which the owner of the equitable title
was charged, showing a repudiation of the trust in order to cause limita-
tion to begin to run.    Procuring the issuance of the patent in his own
name, if he did procure it, was not in itself fraudulent, and the trust
created was a resulting one which would arise where the legal title is
acquired not fraudulently or in violation of any fiduciary duty, but the
intent in theory of equity appears or is inferred or assumed from the
terms of the disposition, or from the accompanying facts and circum-
stances, that the beneficial interest is not to go with the legal title.
Pom. Eq. Jur., sec. 155.    In connection with the issuance of the patent
to Baker, there is no act either of omission or commission in violation
of his fiduciary obligations to Gant.    To have constituted a constructive
trust, Baker must have obtained the legal title to the land, either by
fraud, violation of confidence or in some other unconscientious manner,
and to have done this in either of the modes must have put the holder
of the equitable title upon notice and have started limitation.    Looking
at the circumstance of obtaining the legal title in the light of the sale
afterwards made to Johnston, we might conclude that the patent was ob-
tained by Baker to defraud Gant, but this act was not known to Gant,
and so far as he was concerned, there was no repudiation of the trust re-
sulting from his holding the title to the certificate.    In other words, in
order to have started limitation the fraud in obtaining the patent must
have been such as to put Gant upon notice of the repudiation.    To make
clear our position, we reiterate, that the mere act of obtaining the patent
in his own name, was not one of fraud on the part of Baker, and was

not indicative of an intention to hold adversely to Gant.  It was an act consistent with the utmost good faith, and the relations existing between the parties.

We are of the opinion that the judgment of the District Court should be reversed, and judgment here rendered in favor of appellants for the recovery of the land sued for and all costs in this court and the lower court expended.

*Reversed and rendered.*

Writ of error refused.