KNOX v. GRUHLKEY et al.   (No. 1100.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 24, 1917. On Motion for Rehearing, Feb. 21, 1917.)

1. VENDOR AND PURCHASER ☞266(8) — VENDOR'S LIEN—WAIVER.

While the law gives a vendor's lien when the purchase money for land is not paid, yet it may be waived by taking additional or independent security when it does not appear that the vendor relies on such implied lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 735–747.]

2. DEEDS ☞31—DESIGNATION OF GRANTEE—RIGHTS OF PURCHASER.

Where J. G. was the party intended by the grantor, a deed to I. J. G. carried title, the fact that J. G. was the grantee being susceptible of establishment by extraneous evidence, and hence a purchaser from J. G., who received conveyance from him, took not only the equitable, but the legal, title.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 60–63.]

3. VENDOR AND PURCHASER ☞265(2) — VENDOR'S LIEN—TRANSFER BY GRANTEE—BONA FIDE PURCHASER—CONSIDERATION.

A depositor in a bank, having heard rumors of the bank's financial distress, called upon its officers with reference to his deposit. They assured him of the bank's good condition, and that they could loan his money for ten per cent., and the bank' officers contended that it was loaned for him to the president of the bank, but no such loan was authorized. The depositor having instituted suit for the amount of his deposit, after the bank closed its doors, accepted a conveyance of land from the president in compromise of the suit. *Held* that, as the deposit was guaranteed under the state laws, he was a bona fide purchaser of the land as against the equitable lien of the grantor's vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 702–708.]

4. DEEDS ☞17(1) — CONSIDERATION — SURRENDER OF CLAIM.

The surrender of a claim against a third person is a valuable consideration for a conveyance.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 31, 32.]

On Motion for Rehearing.

5. VENDOR AND PURCHASER ☞265(2)—VENDOR'S LIEN—BONA FIDE PURCHASER—NOTICE.

Where a grantee, after having received a conveyance of land, learned, on applying to his grantor's grantor for a correction of the original conveyance, of a vendor's lien on the property such notice cannot relate back so as to defeat the grantee's rights as a bona fide purchaser without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 702–708.]

6. VENDOR AND PURCHASER ☞265(2)—VENDOR'S LIEN—BONA FIDE PURCHASER—CONSTRUCTIVE NOTICE.

That a deed reciting full payment of consideration named the grantee I. J. G. instead of J. G., was not constructive notice to a purchaser from such grantee of any fact collateral to the objects and effects of the instrument, and such purchaser was not chargeable with constructive notice of the existence of an implied vendor's lien note, and had the slight inaccuracy placed him on inquiry, the deed itself recited payment of the entire consideration.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 702–708.]

Appeal from District Court, Potter County; J. B. Dooley, Special Judge.

Action by W. H. Gruhlkey against J. Garrison and W. A. Knox. From a judgment for plaintiff, defendant Knox appeals. Reversed and rendered as to him, and affirmed as to the first-named defendant.

Bean & Klett, of Lubbock, for appellant. C. E. Gustavus, of Amarillo, for appellee.

HUFF, C. J. W. H. Gruhlkey sued J. Garrison and W. A. Knox. Personal judgment was sought against J. Garrison on a note for $814, dated September 12, 1913, payable to the order of D. M. Young on demand, no interest, and 10 per cent. attorney's fees. It is alleged the Bankers' Trust Company, a corporation, was the legal and equitable owner of 80 acres of land; "that the promissory note aforesaid, executed by the defendant J. Garrison, was given in part payment for and as part of the consideration for a reconveyance and retransfer of the title to the land and premises aforesaid from said Bankers' Trust Company to the defendant J. Garrison, who had theretofore conveyed said land to said Bankers' Trust Company, and by reason of the execution of said promissory note and the agreement to retransfer and reconvey said land and premises by the Bankers' Trust Company, and in an attempt so to do there arose and now exists a valid and subsisting equitable vendor's lien against said land and premises to secure the payment of said note;" that the note was in due course of business transferred to appellee Gruhlkey, and that demand had been legally made for the payment of the note and default made; that W. A. Knox was making some pretended claim to the land. The prayer was for judgment on the debt, and for foreclosure of the lien.

Garrison did not answer, and judgment by default was entered against him for the debt. W. A. Knox answered, denying that there was a vendor's lien; also alleging that by an agreement the lien was expressly waived, and if there was a lien created or intended that he (Knox) had no notice thereof, either actual or constructive; that he purchased the land in good faith, paying a valuable consideration therefor and before any notice that the lien was claimed.

The appellee, by supplemental petition, denied the agreement to waive the lien, alleging that Knox was not an innocent purchaser for value because the consideration was for a pre-existing debt, and also that J. Garrison did not have a sufficient legal title to the land, but that the deed from the Bankers' Trust Company was to one I. J. Garrison, and the deed to Knox was from J. Garrison

in consequence of which Knox could not hold the land as a bona fide purchaser. It is necessary at this time to note the objections of the appellee to the assignments presented because there is no such statement of facts in this court which can be considered for the reason, as urged, that a duplicate was not filed thereof in the trial court; but appellee files herein a waiver to the objection on that ground, for the reason that in making the objections he had overlooked an agreement had with counsel for appellant to waive the filing of the statement in the trial court.

[1] Assignments from 1 to 4, inclusive, and 7 to 9, inclusive, assail the judgment and findings of the trial court, substantially to the effect that there was an implied vendor's lien for the full amount of the note sued on, and that there was not an agreement at the time of the sale and transfer of the land to waive the vendor's lien. The trial court finds that the agreement had was with reference to waiving an express vendor's lien. The evidence does not show that an express lien in terms was mentioned; but we are not prepared to hold that there was no evidence authorizing the court to find such only was the agreement, or that the implied lien was not waived by agreement at the time of the conveyance. While the law gives a vendor's lien when the purchase money is not paid, yet it may be waived by taking additional or independent security by the vendor when it is not made to appear that he also relied upon the lien given by law. Cresap v. Manor, 63 Tex. 485. It appears also that in the absence of an agreement to the contrary by virtue of the operation of law, that the vendor has a lien for the purchase money; but if it affirmatively appears at the time that the lien was intentionally waived, the law will not presume the lien to defeat the intention of the parties. Brown v. Christie, 35 Tex. 689; Glasscock v. Glasscock, 17 Tex. 489. However, on the findings of the court that there was no agreement to waive the implied lien, we will overrule the above assignments.

[2] The fifth and sixth assignments present error on the action of the court in foreclosing the lien against the land as to Knox, who it is asserted was an innocent purchaser. The court held as a matter of law Knox "was not a bona fide purchaser. He took a title which bore an obvious imperfection and accepted an irregular conveyance." The imperfection referred to was that in the deed of reconveyance it recites that it was conveyed to I. J. Garrison, as grantee, and the deed to Knox was from J. Garrison and wife. It is contended that Knox knew that J. Garrison was the party with whom he was dealing while the deed was to I. J. Garrison, but that he took the conveyance anyway.

The Bankers' Trust Company, at a meeting of its stockholders, at which J. Garrison was present, passed a resolution September 11, 1913, to the effect that the company, by its president, attested by its secretary, deed and deliver back to each stockholder his land, notes, or cash put into the company for stock, requiring such stockholder to pay his pro rata share of an amount necessary to reimburse such stockholders who paid cash in full, and to include an additional amount to pay the actual and necessary running expenses of the company, the amount additional to be determined by a finance committee, which was to report on the 12th day of September, 1913. The finance committee reported to the adjourned meeting that 4 per cent. of the face value of the stock would be necessary to meet the requirements of the above resolution, and at the adjourned meeting of the directors the following resolution was passed:

"Amarillo, Texas, 9/12/1913.

"At an adjourned meeting of the directors of the Bankers' Trust Company, which met at 11 a. m. September 12, 1913, pursuant to adjournment of September 11th, at the Elmhirst Hotel, Amarillo, Texas, upon motion of E. H. Steed, seconded by J. R. Wrather, that each person who had put property into the company for stock be deeded back his land, or given back his property as soon as he pays his pro rata of the expenses as audited by the finance committee, amounting to 4 per cent. of the face of his stock, to be paid to D. M. Young, as an individual, either in cash or a note approved by the finance committee, payable on demand, without interest, should the amount so collected be more than sufficient to pay claim against the company as stated in the motion made by J. J. Crume in the meeting at 4:30 p. m. on September 11, 1913, then in that event the amounts so remaining are to be paid back, pro rata to the person who paid in the money to said D. M. Young, deed to be made and delivered as soon as cash or notes has been paid. Motion carried unanimously.　　　　F. M. Curyea, President.

"Attest: D. M. Young, Secretary."

On the same day (September 12, 1913) the Bankers' Trust Company conveyed the land by deed, reciting the consideration therefor to be $1,600 paid by J. Garrison, but the deed recites that the conveyance was to I. J. Garrison, warranting the title to I. J. Garrison. It appears from the testimony and the face of the instrument copied in the record, that the deed, in reciting the payment of the consideration that it was made by I. J. Garrison, but that after writing it, the I. was erased by drawing lines across it. The demand note sued on was signed at the same time by J. Garrison and the deed delivered to him. It was claimed that he controlled something over $20,000 of the stock in the corporation. He, however, contending that only $3,000 was his and the balance his son's (L. L. Garrison). It appears that J. Garrison had conveyed this land to the Bankers' Trust Company, with perhaps other lands, for the stock issued to him. The testimony of all the witnesses is to the effect that J. Garrison was to get this land back under the resolution above set out. The secretary, D. M. Young, testified:

"When J. Garrison turned the note over to me, the company in turn delivered this deed

to the land to him. There must have been a kind of difference in the names. It is I. J. Garrison there, and I notice that the I. has been blotted out since we signed and delivered it to him in one place, but this I. J. Garrison was supposed to be the same man as J. Garrison. The man we have sued in this case is the same person as I delivered the deed to, and will say in connection that Mr. Garrison or some attorney—I have forgotten now whether it was Garrison—wrote me and sent me a corrected deed and asked me to sign it to correct that defect, and I wrote that upon the payment of the note I would be glad to do that."

J. Garrison surrendered his stock to the Bankers' Trust Company, which was canceled. The evidence in this case shows the deed was drawn by Judge Humphres, as an attorney, and was taken from his office to the meeting of the officers of the corporation, by J. Hammons, and there signed and delivered to J. Garrison. There is not a word of evidence that we can find that there is such a person in existence as I. J. Garrison. The substance of all the evidence is that it was intended to be a conveyance to J. Garrison that he was the only party intended. There can be no question but the land was conveyed to J. Garrison. He had conveyed the land to the corporation for stock therein. It had agreed to reconvey it to him, and he had agreed to take such reconveyance, give his note for $814, which he then executed and delivered to the company, together with his stock, which was canceled. There is no evidence the deed was to be made to any one else or to I. J. Garrison, or that there is such a person. The whole proceeding shows that it was a mistake in writing into the deed the letter I. There is no outstanding title shown. The identity of I. J. Garrison is established beyond cavil. The deed was to him, and conveyed the title to him, and when the grantee therein is shown to be J. Garrison, the legal title vested in him. The appellee, in fact, alleges that fact, in the statement that the note was executed by J. Garrison, "for a reconveyance and retransfer of the title to the land and premises aforesaid from said Bankers' Trust Company, to the defendant J. Garrison, who had theretofore conveyed the land to said Bankers' Trust Company." Similarity of names is ordinarily sufficient evidence of the identity in the chain of purchase, and in the absence of evidence casting doubt upon the identity of a party to a conveyance of land it ought to be sufficient in every case. Instead of the evidence casting doubt upon the identity of the grantee in this case, it demonstrates that J. Garrison is the grantee in the deed. In the case of Chamblee v. Tarbox, 27 Tex. 144, 84 Am. Dec. 614, there was a conveyance to Jane Carroll, and a subsequent conveyance from Jane M. Tarbox and her husband, —— Tarbox. This, with the recitals in the deed, was held sufficient proof of identity of Jane Carroll with Jane M. Tarbox, in the absence of evidence to the contrary. This rule has been followed in a variety of cases in which there have been misnomers and mistakes in names, initials, and the like. Wilkinson v. Schoonmaker, 77 Tex. 615, 14 S. W. 223, 19 Am. St. Rep. 803; Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734; Smith v. Gillum, 80 Tex. 120, 15 S. W. 794; Railway Co. v. Haynes, 44 Tex. Civ. App. 272, 97 S. W. 849; Kane v. Sholars, 41 Tex. Civ. App. 154, 90 S. W. 937; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 982; Robertson v. Du Bose, 76 Tex. 1, 13 S. W. 300; Leland v. Eckert, 81 Tex. 226, 16 S. W. 897.

The case of Staak v. Sigelkow, 12 Wis. 259, has announced what we believe to be the rule governing this case so fully that we believe a quotation from it proper. Arnold Staak, through the agency of Mansfield, purchased the land in that case, paying the full consideration. Mansfield, either by mistake or intentionally, took the conveyance in the name of Louis Staak instead of Arnold Staak. Afterwards Staak died, but before his death he delivered the deed to Mansfield for the purpose of procuring a loan of $100 on the land, which it appears Mansfield never did, but a year after Arnold Staak's death, Mansfield sold the land to Sigelkow and executed and delivered to him a conveyance signed and acknowledged by himself, in the name of Louis Staak. The court there said:

"It is obvious that the first question to be determined is whether, by virtue of the deed executed to Louis Staak, the title of the land passed to Arnold Staak, the intended grantee. We are clearly of the opinion that it did. It is to be observed that the whole transaction shows that he was the person really intended. Mansfield was his agent for the express purpose of buying the land; he furnished the purchase money; the deed, soon after its execution, came into his possession; his surname was correctly set forth in the deed, and so far he was properly described by it; and there was no such person in existence as Louis Staak for whom it could have been intended. These circumstances seem to place the intent beyond a doubt, and the question arises whether the disagreement or mistake in the baptismal or Christian name can be explained by parol testimony, so as to give effect in law to the deed. We think it may; that it is a latent ambiguity which is susceptible of explanation by parol proof. It is certain that the deed upon its face gives rise to no doubt or uncertainty, which proves that the ambiguity is latent and not patent. But on looking around for the person of the grantee to whom to apply it, a difficulty arises; we find no such person in existence as Louis Staak; and to explain or remove the difficulty or uncertainty thus brought in by the introduction of extrinsic evidence, further proof as to the person really intended may be received. Such evidence, when admitted, does not tend to impeach or contradict the deed, but to support and uphold it by removing the doubts arising from external circumstances, and applying the grant to the person for whose benefit it was intended."

It is contended by the appellee that the deed to Garrison only evidences that a J. Garrison had an equitable title, and that when Knox took a deed from J. Garrison he obtained an equitable title, if anything, and as

such purchaser he could not claim to be a purchaser without notice, as he would in that instance be charged with all outstanding equities. It has been held that the transfer of a land certificate to, and location of the land for, John Hanaford and upon which a patent was thereafter issued to John Hansford did not change the legal title to Hanaford to a mere equitable title because of the mistake in writing the name in the patent. Hanaford v. Morton, 22 Tex. Civ. App. 587, 55 S. W. 987.

So it has been held the same result will follow where a patent has issued in the name of the grantee of the original certificate who had assigned the certificate before a patent when the assignment is such as to estop the grantor. Humphreys v. Edwards, 89 Tex. 512, 36 S. W. 333, 434; Culmell v. Borroum 13 Tex. Civ. App. 458, 35 S. W. 942.

For a better reason, it occurs to us where parties enter into a contract to convey for a specific consideration which is paid and a deed executed and delivered to the party intended, and no other was intended that it will vest the identified vendee with the legal title, regardless of the mistake in writing the name. It would appear that the trial court was of the opinion that the error in the deed was sufficient to put the purchaser upon notice of all outstanding equities. We cannot agree with this position. All that Knox was required to ascertain in purchasing the land was that the grantee in the deed was identical with his grantor, J. Garrison, and when he learned that fact he was not required to go further. "Notice of this defect was not notice of appellees' claim to the lot, and they could derive no benefit by reason thereof." Allen v. Anderson, 96 S. W. 54. As we understand the findings of the court, Knox had no notice of the vendor's lien when he purchased the land, and that he was a purchaser for value.

[3, 4] We believe the evidence is conclusive that he is a bona fide purchaser under the testimony and under the findings. The facts showed that he paid value. He had on deposit in the Lockney State Bank $1,500. He heard rumors of the bank's financial distress and called upon its officers with reference to his money. They assured him the bank was in good condition, but that they could lend his money out for him for 10 per cent. J. Garrison was the president of the bank, and his son, J. C. Garrison, its cashier. It is contended that the cashier loaned the money to J. Garrison for Knox. The evidence does not show that there was a note in evidence given for this loan or in fact in whose name the loan was made. Knox brought suit against the bank, J. C. Garrison and Will Brewster, for his money, and therein also alleging fraud and conspiracy to loan his money to J. C. Garrison and Brewster. After this the bank was taken charge of by the state authorities, and after its doors were closed in order to compromise the suit by

192 S.W.—22

Knox, J. Garrison deeded the land to him in settlement of his claim against the bank and all parties. This was the consideration for the land. It will not be contended the bank was not indebted to him on the deposit and liable therefor. If the bank loaned the money it was its money. While Garrison testified and claims he borrowed the money from Knox, there was not any evidence of the fact that it was a loan from Knox to him, except the mere claim that his son was acting for Knox in making the loan. The deposit in the bank by Knox the evidence does not show to have been a special deposit or that the bank was acting as a mere bailee of the money. Giving up the claim against the bank was certainly a valuable consideration; under the state banking laws, his deposit was guaranteed. The surrender of a claim against third parties is a valuable consideration. Smith v. Westall, 76 Tex. 509, 13 S. W. 540; Swenson v. Seale, 28 S. W. 143.

Again, it is contended by appellant that his claim against the bank was barred by the statute of limitation when he first learned of the assertion of the vendor's lien by appellee. The evidence, we believe, will support this contention. Tobin v. Benson, 152 S. W. 642.

We believe the court was in error in foreclosing the lien on the land. The judgment will be affirmed as to J. Garrison, but reversed and here rendered that the vendor's lien set up be not foreclosed as to Knox and the land in question; and that Knox recover his costs in this court and the court below.

Affirmed as to Garrison, and reversed and rendered as to Knox.

### On Motion for Rehearing.

[5] It apparently is the contention of appellee that because Knox, after purchasing the land, asked the Bankers' Trust Company for a corrected deed and instituted a suit to correct the deed, and was also, at that time, informed if the note executed by Garrison for the land was paid the deed would be corrected, that this would constitute notice. Notice after the purchase cannot act retroactively, so as to defeat an already vested title acquired by a bona fide purchaser.

[6] It is sought to show that Knox had notice of the existence of the implied vendor's lien. The deed executed shows on its face that the purchase money was paid. There is no evidence on the face of the deed that the purchase money was unpaid. The trial court found that there was no actual notice to Knox that the purchase money remained unpaid, but finds Knox was not a bona fide purchaser, because he took a title with an obvious imperfection and accepted an irregular conveyance. He must, therefore, have based his conclusion upon constructive notice conclusively presumed. This obvious, irregular conveyance and title does not disclose that it was so on account of nonpayment

of the purchase money, but if irregular, that there was either a clerical error in the deed, or that the legal title was in some one else. When it was ascertained that it was a clerical mistake, that the deed conveyed the land to the vendor of Knox, there ,was then not only an equitable title in his grantor, but also the legal title. There is no presumption which follows from this mistake, conclusive or otherwise, that there was notice to Knox of the implied lien.

. There are well-recognized exceptions to the general rule of constructive notice through title papers. The purchaser has no constructive notice contained in a recital "from which other persons do not derive any rights in such property; he is not charged with notice of any fact collateral and foreign to the objects and effects of the instrument as a conveyance of an estate or interest to himself." The rule is not extended to recitals or statements contained in the instrument which deals with another subject-matter not connected with the direct series of title deeds by reference. As to such the purchaser is not charged with constructive notice. 2 Pom. Eq. Jur. § 629. The appellee could not have derived any right in the property by the recital that the conveyance was to I. J. Garrison instead of J. Garrison. This mistake was not such as to put a reasonably prudent man upon inquiry, and of such a character as would lead to a discovery of the main fact; that is, the existence of an unpaid purchase-money note, by the exercise of proper diligence in pursuing the inquiry as to whether J. Garrison was the person to whom the land was conveyed. College Park, etc., v. Ide, 15 Tex. Civ. App. 273, 40 S. W. 64. The Bankers' Trust Company by its deed to Garrison by the recital therein acknowledged the receipt of the full consideration in hand paid, thereby satisfying any inquiry that might otherwise have been prosecuted. Eylar v. Eylar, 60 Tex. 315. A mistake in the initial of the name of the grantee would not excite inquiry, as to whether the purchase money was paid, and it does not occur to us that a reasonable and prudent man would be put upon the inquiry for such a fact.

The motion is overruled.