## DAVENPORT et al. v. EAST TEXAS REFINING CO.

### No. 5378.

Court of Civil Appeals of Texas. Texarkana.

April 15, 1939.

Rehearing Denied April 27, 1939.

Hurst, Leak & Burke, of Longview, and Roy W. Starnes, of Gladewater, for appellants.

Dillard Estes, of Dallas, and William C. Davis, of San Antonio, for appellee.

WILLIAMS, Justice.

Appellants, C. A. Davenport and H. W. McCurley, composing a partnership, sued appellee, East Texas Refining Company, for the alleged conversion of 160,000 barrels of crude petroleum oil. Appellee answered with general and special exceptions, general denial, and urged an estoppel and plea in bar to appellants' right of recovery. A hearing was had on the plea in bar which the court sustained. This plea in bar so urged is based upon a judgment in rem rendered by this same court at the same term thereof, styled "State of Texas v. 200,000 barrels of oil, et al." This last mentioned cause was prosecuted by the attorney general's department of Texas under HB No. 581, c. 246, Acts of 1935, Vernon's Ann.Civ.St. Art. 6066a, to condemn alleged unlawfully produced oil and to abate an alleged nuisance, and will hereinafter be referred to as cause No. 269–C.

For cause of action appellants alleged that they had constructed on their 80-acre lease in the Martha Dillard Survey a dam and pick-up trap on a certain branch or tributary of Glade creek to catch and salvage waste, abandoned, and fugitive oil which drained across their premises on the watershed of the Gladewater area to Sabine river; that they had so used this trap for months prior to June 1, 1935; that on or about said date much oil had escaped from various refineries, pits, wells, loading racks, and pipe line breaks, and had become fugitive oil, and had been trapped by them and reduced to their possession on their premises; that by reason thereof they became the lawful owners of said fugitive oil; that appellee, without their consent and over their protest, with armed guards came upon their premises and pumped this oil out of their trap and appropriated the same to appellee's own use and benefit to appellants' damages in the sum of $160,000.

Under the plea in bar, briefly stated, appellee alleged in detail a flooded condition of the area involved, large quantities of inflammable crude oil loose and floating upon these floodwaters, the oil being impossible of identification, and that the presence of such oil created a grave danger and a great emergency; a mass meeting of the people to devise means to eliminate the danger, at which representatives of various state agencies were present and in which appellants and their representatives participated; the filing of a suit in rem by the state against "200,000 barrels of crude oil et al" to condemn this oil and eliminate this emergency and nuisance. Appellee set up and introduced in evidence the various pleadings, orders and judgment had in the suit in rem; that in pursuance of the order and contract of May 18, 1935, later herein detailed, it had so acted and had gathered up 127,438 barrels of oil off these floodwaters at an expense of $29,645.97; and had paid over to the receiver and to the state and federal authorities the further sum of $27,300.95.

Appellants in a supplemental petition answered with various special exceptions and denials, specially denying that service of citation was ever had upon them in cause No. 269–C.

Appellant McCurley was called as a witness by the appellee under the provisions of Article 3769c. His testimony discloses that he was present at the mass meeting prior to the institution of any litigation. He participated in that meeting; that he had notice of appointment of the receiver immediately after appointment; and admits that he went to Marton Harris, assistant attorney general, prior to appointment of a receiver, and explained to Mr. Harris that "we (McCurley and Davenport) would be glad to throw our assistance in there in what was then or might come in the future, regardless of cost, but asking his assistance for the state to give us tenders on that oil when we bought it."

On May 13, 1935, suit in rem, No. 269–C, was instituted by the attorney general of Texas in the name of the state, the

railroad commission and the city of Long-view as plaintiffs, complaining of and naming as defendants 200,000 barrels of crude petroleum oil and by-products, situated on and adjacent to Glade creek above its juncture with Sabine river a short distance southwest of the city of Gladewater, and on and over the Martha Dillard and the D. B. Shoults Surveys in Gregg county. The petition also named various persons and firms, including appellants, as defendants and alleged that they were claiming some interest in said oil, and alleged that they were made parties to clear title. This verified petition alleged the oil to have been produced in violation of the proration laws of Texas; unlawful oil and was a nuisance; that this oil was subject to a gross production tax due the state in the sum of $8,500 which was past due and unpaid, and to secure its payment the state held a tax lien. The petition contained further allegations in regard to the oil floating over the floodwaters covering a large area, the inflammability of such, and the imminent danger and hazard of such oil igniting and burning up property in that area, including the town of Gladewater, and of its being swept into Sabine river and polluting same; and said oil was in danger of being removed, wasted, lost or destroyed. Plaintiffs prayed for the immediate appointment of a receiver without notice because of such imminent danger, and after notice had on defendants and on final hearing that same be condemned as unlawful oil, a nuisance, and for foreclosure of its tax lien, etc. It is evident that this suit was brought pursuant to HB No. 581, supra, and also to abate a nuisance.

The court immediately appointed John Taylor receiver, with full power to promptly take possession of the oil, to lease premises for storage, to employ labor, pumps, and purchase material necessary to gather up and impound the oil and to execute obligations of the receiver with a lien on the oil for expenditures necessary.

On May 18, 1935, this receiver reported to the court his inability to obtain funds or assistance necessary to carry out the orders theretofore authorized, and made known to the court his ability to contract with the East Texas Refining Company, appellee in the present suit, whereby it would furnish the expenses, men, and machinery and impound this oil; and, in addition, pay a certain price there named for such oil as should be recovered. This report and motion to the court was verified.

Upon a hearing of this motion the district court on May 18, 1935, authorized and ordered the receiver to execute a contract with the East Texas Refining Company under which said company was to proceed immediately at its own risk and expense to impound and remove this oil then floating on the said waters in the area described; and to use all means to prevent same from becoming ignited, and to pay 22½¢ per barrel for all oil so recovered. Further details of this decree pertinent to the disposition of this appeal will later be set out.

Approximately two years later, on April 22, 1937, the trial court entered an order and set May 3, 1937, for hearing of all parties and issues to finally adjudicate said lawsuit. Appellants timely received a copy of this notice. On this last mentioned date one of the attorneys appearing of record for appellants in the instant suit appeared, styling himself as "amicus curiae", and by motion suggested to the court that C. A. Davenport and H. W. McCurley did not appear by counsel or in person and such recitation appearing in the order of May 18, 1935, was not true. Whereupon the court entered an order correcting such recitation so as to read that said parties, Davenport and McCurley, had not appeared in person or by counsel and had not been served with process to answer. Appellants offered in evidence the amicus curiae motion and the above decree of the court.

On May 3, 1937, the state filed its first amended original petition wherein it pleaded that the railroad commission and the city of Longview who had joined in the original suit had no further interest in the subject matter of the suit; that various parties named theretofore as defendants had abandoned any claim to said oil and claimed no interest in same. This amended petition, which is lengthy, alleged the various steps and orders theretofore taken and made in the litigation; the contract; the receiver's report; and prayed judgment, formally declared said oil to be a nuisance, unlawful and forfeited to the state:

"It was the contention of these appellants that the district court was without authority or jurisdiction to enter a judgment in cause No. 269–C, which was brought pursuant to House Bill 581, until

the provisions of House Bill 581 or Art. 6066a, Section 10 of the Revised Civil Statutes, had been strictly complied with and that since said article does not authorize the court to order the sale of such oils as involved in this controversy until after a trial upon the merits of the case to which all parties necessary have been duly cited, and that since the judgment entered in said cause shows on its face that the court ordered such oil sold on May 18, 1935, which was not in compliance with but violative of the provisions of House Bill 581, the judgment is on the face of it void.

"That if the judgment be sought to be maintained and upheld as a judgment abating a nuisance under the police powers of the state that the same cannot be a valid judgment because the judgment shows upon its face that the court ordered said oil sold and disposed of long prior to the rendition of any judgment finding that said oil was a nuisance and that said oil being property which is not unlawful to possess that under the general laws regulating nuisances and authorizing their abatement, the court would be required, before he can destroy property or dispose of it, to have a trial, after citing all parties necessary, and to enter a judgment condemning said oil as a nuisance and that any procedure or attempt to dispose of the oil prior to the rendition of such a judgment is void and is violative of the Bill of Rights of the State of Texas and the Constitution of the United States, and that therefore the defendant or appellee acquired no rights in said oil by reason of its alleged contract of purchase of May 18, 1935."

It is to be observed that appellants have directed a collateral attack upon the decree entered by the court on May 18, 1935. Appellants make no complaint of the power of the court to appoint, or the appointment of a receiver on an ex parte hearing. They contend that the court was without authority to dispose of the oil until after service had been had on appellants, and after a trial upon the merits. It is therefore evident that the disposition of appellants' contentions as far as their right of recovery against appellee is concerned depends upon whether this order of May 18, 1935, is void or not. This order reads in part as follows:

" * * * And it appearing to me that the defendants in this case have had proper and legal notice of this hearing, and the plaintiff appearing by counsel and announcing ready for trial, on said motion, and the receiver appearing by counsel and announcing ready on said motion, the defendants George Culver * * * H. W. McCurley and C. A. Davenport, appearing by counsel and announcing ready on said motion * * * and the court having heard such application and proof thereon; and having heard argument of counsel representing the parties, and duly considered the evidence introduced and the argument of counsel, finds that there is approximately 150,000 to 250,000 barrels of oil situated upon the waters of Glade creek, and that the same is highly inflammable, and if ignited would constitute a very grave and dangerous hazard to the inhabitants of this county and to their property, and particularly the inhabitants of the town of Gladewater, a city of approximately 10,000 people * * * the same constitute a very grave and immediate danger to the oil wells and storage of crude oil and refineries located in that vicinity, and through them to the entire East Texas Oil Field, and the danger is immediate and very grave, and that same can only be removed by an impounding of the oil and removing the same from said creek. That in addition to the fire hazard the same constitutes a grave danger to the health of the inhabitants of this county who reside in the city of Longview, in that said town receives its water supply from Sabine river in which said Glade creek empties, unless removed from said creek will pollute the drinking water of the city of Longview, and will likely kill the fish in Sabine river.

"The court further finds that the receiver had made all diligent efforts to employ labor and secure material, machinery and pipes to enable the receiver to remove said oil and has failed to secure same because he can find no person willing to advance the material or machinery or to perform labor upon the credit of the receiver and the receiver is unable to secure same or to remove said oil; * * * that the receiver is unable to secure any person willing to contract to remove said oil or to impound same on the credit of the receiver, and is unable to secure funds for such purpose and that the only feasible and practical method of having said oil removed is to sell same where it is now situated. * * * "

Then follows recitals of terms of contract to be executed wherein the purchaser is obligated to proceed at once to abate this nuisance at the purchaser's own risk and expense; and orders and authorizes the receiver to execute such contract, under which appellee acted and performed.

■ This order containing these findings and recitals of the court that such an emergency existed import absolute verity as against the collateral attack here made.

■ "It is held with practical unanimity by the courts everywhere that the rule against permitting collateral attack applies to protect interlocutory orders and proceedings as well as final judgments." Robins v. Sandford, Tex.Com.App., 29 S. W.2d 969, 971, and authorities there cited." See, also, Wilkerson v. Schoonmaker, 77 Tex. 615, 14 S.W. 223, 19 Am.St.Rep. 803; Scales v. Wren, 103 Tex. 304, 127 S.W. 164; Kreis v. Kreis, Tex.Civ.App., 36 S.W.2d 821.

In fact, appellants do not contend that such an emergency did not exist. Neither do they in any wise assert that any other remedy to abate the nuisance was open to the court than the one there authorized.

■ Under such status of the record, we have here presented the existence of an emergency threatening grave and imminent danger. The court was dealing with an emergency which could not brook a delay of perhaps days or weeks to ascertain if possible and serve with process any parties who might assert some claim to the subject matter. This large quantity of inflammable oil loose and afloat upon flooded streams was comparable to a mad dog loose in a community which called for action then and there. The maxim "Salus populi suprema est lex" was applicable. 55 C.J. p. 1347.

In Cooley on Constitutional Limitations (7th Ed.) page 878, it is stated: " * * * And there are other cases where it becomes necessary for the public authorities to interfere with the control by individuals of their property, and even to destroy it, where the owners themselves have fully observed all their duties to their fellows and to the state, but where, nevertheless, some controlling public necessity demands the interference or destruction. A strong instance of this description is where it becomes necessary to take, use, or destroy the private property of individuals to prevent the spreading of a fire, the ravages of a pestilence, the advance of a hostile army, or any other great public calamity. Here the individual is in no degree in fault, but his interest must yield to that 'necessity' which 'knows no law.' "

This same doctrine or maxim is further recognized in Crossman v. City of Galveston, 112 Tex. 303, 247 S.W. 810, 26 A.L. R. 1210. See, also, Bowditch v. Boston, 101 U.S. 16, 25 L.Ed. 980, and decisions there cited; Page v. Town of Warrenton, 4 Cir., 210 F. 431, 432; Aitken v. Wells River, 70 Vt. 308, 40 A. 829, 41 L.R.A. 566, 67 Am.St.Rep. 672; 43 C.J. p. 261, Sec. 272; 43 C.J. p. 959.

In Keller v. Corpus Christi, 50 Tex. 614, 628, 32 Am.Rep. 613, in discussing the liability of a city for destruction of a building to prevent the spread of fire in a city, and the reasons there stated applicable to the facts here presented, it is said: "There is, however, a distinction between the exercise of the right of eminent domain, and that of a police regulation to meet an impending peril, by the destruction of an adjacent building to prevent the spread of fire. The one can await the forms and tardiness of the law; the other is governed by a necessity which knows no law. Delay in the latter case may be certain destruction. * * * It is said by Clarendon that such unwise delay on the part of the lord mayor of London caused half that city to be burned in the great conflagration of 1665."

Under such a status of an emergency as reflected in this decree of May 18, the findings of the court not being impeached or attacked, the action of the court in authorizing and directing the receiver to execute this contract with appellee to abate an impending peril before service on appellants and before final hearing on its merits was not void. Hence, from conclusions so reached, this order and decree presented a valid plea in bar to appellants' right to recover on its action asserted against this appellee.

We pretermit discussion of the plea of estoppel urged by appellee in its brief.

The judgment of the trial court is affirmed.