BALDWIN v. DREW. (No. 10.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 21, 1915. Rehearing Denied Nov. 18, 1915.)

1. VENDOR AND PURCHASER &⟶334—REMEDIES OF PURCHASER—RECOVERY OF MONEY PAID—QUITCLAIM DEEDS.

Where one takes by a quitclaim deed, taking only the chance of title, and not the land itself, he cannot, on failure of title, recover money paid.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. &⟶334.]

2. COVENANTS &⟶14 — IMPLIED COVENANTS — QUITCLAIM — STATUTORY RULES — APPLICATION.

Vernon's Sayles' Ann. Civ. St. 1914, arts. 1112, 1113, providing that "from the use of the words 'grant and convey' in any conveyance by which an estate of inheritance or fee simple is to be passed," certain covenants of warranty are implied, does not apply to the use of such words in a quitclaim deed.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 11; Dec. Dig. &⟶14.]

3. DEEDS &⟶25—CONSTRUCTION—"QUITCLAIM DEEDS."

A deed conveying only the right, title, and interest of the grantor in land, and not the land itself, is a quitclaim deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 49; Dec. Dig. &⟶25.

For other definitions, see Words and Phrases, First and Second Series, Quitclaim Deed.]

4. DEEDS &⟶93 — CONSTRUCTION — INTENT OF PARTIES—EVIDENCE—ADMISSIBILITY.

In construing a deed the intention of the parties governs, and that may be ascertained from the terms of the deed, adequacy of price, and other pertinent circumstances surrounding its execution.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232; Dec. Dig. &⟶93.]

5. DEEDS &⟶190—PLEADING AND PROOF.

On allegations in a supplemental petition in an action on a note given for the price of land conveyed that the deed was only a quitclaim, that the consideration was only $500 for 1,579 acres of land, and that the parties intended to have a quitclaim deed only, the question of the nature of the conveyance is squarely presented, and the court may then consider surrounding circumstances in construing the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 561; Dec. Dig. &⟶190.]

6. APPEAL AND ERROR &⟶934 — RECORD — STATEMENT OF FACTS — PRESUMPTIONS — WHEN INDULGED.

Where there is no statement of facts in the record, the court on appeal will presume the facts necessary to the judgment and susceptible of proof on the pleadings to have been proved; but the rule does not apply where the record contains findings of fact and conclusions of law therefrom.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3782; Dec. Dig. &⟶934.]

7. DEEDS &⟶25—CONSTRUCTION—WORDS EMPLOYED.

A deed in words that the grantor does "grant, sell, convey, and quitclaim unto said B. 1,579 acres of land," and further providing that it "is understood that the intention is to convey * * * all the land, * * *" is not a quitclaim deed, since it conveys the land itself.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 49; Dec. Dig. &⟶25.]

8. EVIDENCE &⟶18—JUDICIAL NOTICE—VALUE OF LAND.

The court cannot, in construing a deed, take judicial notice that the recited consideration of $500 for the fee in 1,579 acres of land was inadequate, so as to construe the deed to be a quitclaim only.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 22; Dec. Dig. &⟶18.]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by Tom M. Drew against J. C. Baldwin. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Baldwin & Baldwin, of Houston, for appellant. Marshall & Harrison, of Liberty, for appellee.

CONLEY, C. J. This suit was filed by Tom M. Drew against Jacob Baldwin on a promissory note dated February 12, 1910, for the sum of $300 executed by Jacob Baldwin to Tom M. Drew, and given in part payment of the purchase price for 1,579 acres of land, which had been previously sold to Jacob Baldwin by Tom Drew under deed dated February 12, 1910. The payment of the note sued on was secured in the deed by a vendor's lien, and in addition to judgment on the note the plaintiff also prayed for foreclosure of the lien on the land.

The defendant, Jacob Baldwin, answered, admitting the execution of the note, and that it was given as part payment for the land. He further contended that plaintiff, in selling the land to him, executed a warranty deed therefor, and that at the time of the execution of the deed there was due, and unpaid

state and county taxes amounting to the sum of $1,189.55, which taxes were an existing incumbrance on the land. He also contended that the property had been conveyed to the plaintiff prior to the execution of said warranty deed by one Tom Moore, and that on or about the 26th day of August, 1912, the said Tom Moore notified the defendant not to pay the note sued on herein to Tom M. Drew, the plaintiff; that he (Moore) was in fact the owner of said 1,579 acres of land, and that the plaintiff, Tom M. Drew, was only holding the land in trust for him (Moore), and that he (Moore) was the owner in equity of the note; the defendant contending further that, the consideration for the land having failed and implied warranties in said deed having been breached, he asked that the contract between himself and plaintiff, Drew, be canceled and that he have judgment against the plaintiff for $200 paid the said Drew in cash on February 12, 1910, as the other part of the purchase price for said land, with interest thereon at 6 per cent., that the note executed by defendant and the deed to him by Drew be canceled, and that, if this relief was not granted, the plaintiff be required to satisfy and pay off the tax lien against the property before the defendant be required to pay the note, and that the said Tom Moore be made a party to the suit, and be required to establish his interest in the note.

The case was tried by the court without the intervention of a jury, and the court rendered judgment for the plaintiff for the full amount of the note, together with interest and attorney's fees, and decreed a foreclosure of the vendor's lien on the note; and denied the defendant any of the relief he prayed for.

There is no statement of facts in the record, but the court filed its findings of fact and conclusions of law, as follows:

"This is a suit filed by Tom M. Drew against Jacob Baldwin, on a promissory note for $300, secured by a vendor's lien dated February 12, 1910. * * * I have rendered judgment for the plaintiff, and at the defendant's request I make and file the following conclusions of fact:

"First. On February 12, 1910, the plaintiff, Tom M. Drew, executed to the defendant, Jacob C. Baldwin, a deed to 1,579 acres of land in Liberty county, Texas. A true copy of said deed is as follows, to wit:

" 'State of Texas, County of Harris.

" 'Know all men by these presents, that I, Tom M. Drew, of the county of Polk and state of Texas, for and in consideration of the sum of $200 cash to me in hand paid and the further sum of $300 to be paid as hereinbefore recited by Jacob C. Baldwin, of the county of Harris and state of Texas, have granted, sold, conveyed, and quitclaimed, and by these presents do grant, sell, convey, and quitclaim, unto the said Jacob C. Baldwin, of the county of Harris and state of Texas, 1,579 acres of land, the same being a part of the D. D. Martinez leagues, Nos. 9 and 6, in Liberty county, Texas, and being the same land sold and conveyed by H. J. McCordall, administrator of the estate of James Davis, deceased, to D. D. Moore, and by Tom Moore, sole surviving heir of said D. D. Moore, deceased, to myself, as shown by deed of record in Liberty county, Texas, and by certified copy of said probate documents recorded in volume 25, pages 303–313, of the Deed Records of Liberty county, Texas, to which record reference is made for better description. It being understood that the intention of this instrument is to convey to the grantee all land in either of the leagues, above mentioned, which was at any time owned or claimed or stood in the name of D. D. Moore, no matter what the description by metes and bounds thereof might be. To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Jacob C. Baldwin, his heirs and assigns, forever. And I hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend all and singular the said premises unto the said Jacob C. Baldwin, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof, by, through, or under me. It is expressly understood that the consideration hereinbefore mentioned, the sum of $200, has been this day paid in cash, and the further sum of $300, as evidenced by the promissory note of said grantee of even date herewith, made payable to the grantor, and due two years after date, with interest at the rate of six per cent. per annum, and that a vendor's lien is expressly retained to secure the payment of said note and interest. Witness my hand at Houston, Texas, this the 12th day of February, 1910.      [Signed] Tom M. Drew.'

"Second. The consideration to the said T. M. Drew for the conveyance above set forth was $500, as recited in the deed, said consideration being correctly recited therein, of which the sum of $200 was paid by Jacob C. Baldwin to said Drew on the same date, and he executed his note for $300, due in two years after date, as recited in said deed, bearing interest at 6 per cent. per annum, and providing for 10 per cent. attorney's fees, on principal and interest due, if suit should be brought on same.

"Third. At the time the plaintiff, Tom M. Drew, executed said deed to said Jacob C. Baldwin, there was then due and unpaid to the state of Texas and county of Liberty taxes amounting to $1,189.55, as alleged in the defendant's answer. They were then a valid, subsisting tax lien against said property. Said taxes have never been paid, and are at this time a valid, subsisting lien against the land conveyed by Drew to Baldwin, as above mentioned.

"Fourth. The land in controversy—that is to say, upon which the plaintiff seeks to foreclose his lien—was on or about the 1st day of January, 1861, conveyed by J. McCordall, administrator of the estate of James Davis, to D. D. Moore. D. D. Moore departed this life about the year 1890, and left one child surviving him, Tom Moore, who on or about the 10th day of May, 1905, as sole surviving heir of D. D. Moore, deceased, he being the only heir, executed to the plaintiff, Tom M. Drew, a general warranty deed, by which he conveyed to Tom M. Drew said land for a recited consideration of $10 cash paid and other valid and valuable considerations, the receipt of which is hereby acknowledged. Tom Moore is now living in Kauffman county, Texas.

"Fifth. On or about the 26th day of August, 1912, Tom Moore notified the defendant, Jacob C. Baldwin, that the land had been conveyed to Tom M. Drew in trust and had not been paid for, and that he (Moore) was the owner of the land and not to pay the note to the plaintiff.

## "Conclusions of Law.

"From the foregoing I conclude as a matter of law that the deed above set forth is a quitclaim or special warranty deed, and that the special warranty clause is sufficient of itself to limit the implied warranty contained in the deed by reason of the use of the words 'have granted, sold,

and conveyed, and by these presents do grant, sell, and convey.' This being true, the defendant is not entitled to protection against the unpaid taxes existing against the land at the time he bought the same, and is not entitled to have the contract between him and the plaintiff set aside, and to recover from the plaintiff the sum of money which he paid the plaintiff, together with interest thereon from the date of payment.

"Second. I find the amount due upon the note sued upon, together with interest and attorney's fees, to be $415, and ordered that judgment be entered for the plaintiff against the defendant for this amount of money, together with a foreclosure of plaintiff's vendor's lien for the payment of the same. To each and all of said conclusions of fact and of law, and of the judgment ordered entered thereon, the defendant in open court then and there excepted, and gave notice of appeal to the Court of Civil Appeals at Galveston."

Appellee's first, second, and fifth assignments of error will be considered together, inasmuch as they involve a discussion of the same legal question in the case.

[1] Under these assignments the appellant contends that the court erred in rendering judgment for the plaintiff, inasmuch as it is undisputably shown that the note sued on was executed as part of the consideration for the 1,579 acres of land purchased by appellant from the appellee, and that the use of the words "grant and convey," in the deed executed by appellee to appellant, carried in themselves an implied covenant on the part of the plaintiff that, previous to the time of the execution of such conveyance, the grantor had not conveyed the same estate, or any right, title, or interest therein, to any person other than the grantee, and that such estate was at the time of the execution of such conveyance free from incumbrances, which included the unpaid taxes.

A solution of the questions raised under these assignments of error must necessarily be decided by determining the character of the conveyance executed by the plaintiff, Drew, to the defendant, Baldwin, bearing date of February, 12, 1910. The trial court held this deed to be a quitclaim. If one takes under a strictly quitclaim deed—that is, one by which the chance of title, and not the land itself, is conveyed—he will not be accorded the protection which the defendant seeks in this case, for the obvious reason that he contracted for the interest only which the vendor then had in the land. If the vendor had previously divested himself of all or a portion of the land, to the extent of the divestiture there would be no right remaining in the vendor to pass by the quitclaim to the vendee. Thorn v. Newsom, 64 Tex. 164, 53 Am. Rep. 747. In commenting upon the case of Hope v. Stone, 10 Minn. 141 (Gil. 114), and which case is cited in Richardson v. Levi, 67 Tex. 365, 3 S. W. 447, our Supreme Court said:

· "The court, in holding that the deed before them, which conveyed only the right, title, and interest of the grantor, did not protect the grantee against a previous trust with which the land * * * was charged, said that if it had been a conveyance of the land, instead of the

right, title, and interest of the grantor, it might be necessary to inquire whether the registration or possession of the opposing claimant was notice to the grantee. But they say, as he only took the grantor's right, he took nothing which the latter had previously conveyed. The very terms of the deed were notice to him of all the rights previously conferred upon others by his grantor."

[2] The Revised Statutes (articles 1112, 1113, Vernon's Sayles' Texas Civ. St.), upon which appellant relies for authority for his proposition to read into the conveyance from Drew to himself the implied covenant as to previous conveyances and freedom from incumbrances, does not apply to any other conveyance than one by which an estate of inheritance or the fee simple is granted. The statute reads as follows:

"From the use of the word 'grant' or 'convey,' in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs and assigns, are implied, unless restrained by express terms contained in such conveyance: 1. That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate, or any right, title or interest therein, to any other person than the grantee. 2. That such estate is at the time of the execution of such conveyance free from incumbrances."

Under the common law, conveyances are classified, first, as original or primary conveyances, which are those by means whereof the benefit or estate is created or first arises; and, second, derivative or secondary conveyances, whereby the benefit or estate originally created is enlarged, restricted, transferred, or extinguished. Original conveyances are the following: Feoffment, gift, grant, lease, exchange, and partition. Derivatives are release, confirmation, surrender, assignment, and defeasements. Blackburn, vol. 1, pp. 309, 310.

[3] If a deed purports and is intended to convey only the right, title, and interest in the land, as distinguished from the land itself, it is strictly speaking a quitclaim deed. The words used in the ordinary form of a quitclaim at common law are "remise, release, and forever quitclaim all the right, title, and interest" of the party making the deed. Richardson v. Levi, 67 Tex. 359, 3 S. W. 444. A quitclaim deed has with us the same effect as a release at common law. Harrison v. Boring, 44 Tex. 255. Therefore, as a conveyance, it must fall in the second classification, and is of a dignity less than a conveyance of an estate of inheritance or an estate in fee, and for this reason the statute does not apply to a strictly quitclaim deed.

[4] Much has been written and said about the rules for determining whether a conveyance is a transfer of the land itself, or a mere chance for title, and we only deem it necessary to quote from a few of the many cases on that subject. When such a question is properly raised, it would seem that the intention of the parties is the main ques-

tion, and to that end the terms of the deed, the adequacy of the price, and other pertinent circumstances surrounding the execution of the deed, are admissible to show whether the purchaser bought the land, or merely bought a chance for title.

In the case of Harrison v. Boring, 44 Tex. 255, the court, after citing a number of authorities, says:

From these authorities "it may be fairly deduced that where the deed contains evidence that the absolute right to the land, and not the title or the chance of the title, is sought to be sold and bought, the purchaser may be a bona fide purchaser, notwithstanding the deed may have in some other respects the qualities of a quitclaim deed in form. Not only the terms of the deed, but the adequacy of the price given, and other circumstances attending the transaction, may serve to show, when brought in evidence, whether the purchaser bought the land, or bought merely the title. * * * The fact appearing in the deed that the company expressly retained a vendor's lien [may] be construed as tending to show that it was intended to sell the land with the absolute right of the fee, and not merely the title or chance of the title, and if that fact had been aided by proof of payment of full value of the lot, as though no adverse interest was claimed on it, or other like circumstances, it might have been left to the jury to determine in connection with the deed whether or not the parties intended to convey such absolute right to the land, as that it was not regarded and intended by them to be a mere quitclaim deed to the land, notwithstanding it purported to convey only the company's right and title, and contained only a special warranty. A deed, as other instruments, may be read and construed [in] the light of surrounding circumstances under which it was executed. While a deed may be so plain in its terms as to require the court to construe it to be a quitclaim [deed] in one case, or an absolute conveyance of the land in another case, still its wording may be such as to raise a question whether it is the one or the other, and in that event the circumstances under which it is made and purposes for which it is made may be considered to fix its true character as being the one or the other."

In Taylor v. Harrison, 47 Tex. 461, 26 Am. Rep. 304, the court said:

"Whether a deed is a [quitclaim or a warranty] is not to be determined merely by an omission of the covenant of * * * warranty of title, but may be inferred 'not only from the terms of the deed, but from the adequacy of the price given, and other circumstances attending the transaction,' calculated to show the real intent and purpose of the instrument. * * * The meager statement of facts * * * does not sufficiently enlighten us in regard to the 'circumstances attending the transaction,' to enable us to draw a satisfactory conclusion as to the import and proper construction of the deed from the administrator. We are unable to say what was the character of claims for the payment of which the sale was ordered, or that the creditors for whose benefit the sale appears to have been made were within the protection of the statute, or that the purchaser was without * * * notice of the prior deed, or whether or not the price at which the land was sold indicates a sale of the land or a mere claim or chance of title to it."

In Thorn v. Newsom, 64 Tex. 164, 53 Am. Rep. 747, it is said:

"In the determination of that question [whether a conveyance was a quitclaim or a warranty], resort should be had to the circumstances attending the transaction, the primary object being to arrive at the intention of the * * * parties; for if their intention was that the one purchased and the other intended only to sell his interest in the land, then it would be held that the bond called for only a quitclaim deed. On the other hand, if the obligee intended to contract for an absolute conveyance of the land, and the obligor intended to bind himself to make that character of conveyance, even though it was upon special warranty, nevertheless it would be a conveyance of the land, as distinguished from a release or transfer of merely the obligator's right."

In Carleton v. Lombardi, 81 Tex. 357, 16 S. W. 1081, the court said:

"Not only the terms of the deed but the adequacy of the price given, and other circumstances attending the transaction, may serve to show, when brought in evidence, whether the purchaser bought the land or bought merely the title."

In the case of Culmell v. Borroum, 13 Tex. Civ. App. 461, 35 S. W. 943, the court said:

"Much has been written on what it takes to constitute an instrument a conveyance of the land itself, or merely a release of such title, however imperfect it may be, lodged in the grantor; but the matter, it seems, resolves itself into a question of arriving at the intention of the parties. It has been held in this state that 'while a deed may be so plain in its terms as to require the court to construe it to be a quitclaim in one case, or an absolute conveyance of the land in another case, still its wording may be such as to raise a question whether it is the one or the other, and in that event the circumstances under which it is made and the purposes for which it is made may be considered to fix its true character as being one or the other.' If the deed, no matter how expressed, shows on the part of the grantor an intention to convey the land itself, then it was not a quitclaim * * * but, if it conveyed only the title that the grantor may have had in the land, * * * the grantee is charged with notice of all the risks attending such a purchase. The deed * * * conveyed 'all my right, title, and interest in and to that certain tract of land,' which is followed by a description of the lands and the habendum clause, 'To have and to hold the title unto him, ——, his heirs and assigns, forever,' which evidently refers back to what was conveyed, namely, 'right, title, and interest.' The warranty is of the 'title to the land.' The warranty clause * * * forms no part of the conveyance, but is looked upon as a separate contract. * * * The use of the words 'bargain and sell' do not alter the character of the instrument. * * * We conclude * * * that the deed * * * was a quitclaim, and not an absolute, conveyance of the land."

In the case of Threadgill v. Bickerstaff, 87 Tex. 523, 29 S. W. 758, the court said:

"The clear deduction from the cases cited is that in order to charge a purchaser with notice of an unrecorded instrument, a secret lien, or equity, by reason of the character of the deed under which he claims, that deed must purport to convey and quitclaim to the purchaser no more than the right, title, or interest of the grantor. The tests by which the character of the deed is to be determined are clearly and forcibly expressed in the statement of the rule. It does not matter that the instrument used the word 'quitclaim.' If it conveys to the grantee the land itself, it is not such a deed as will charge him with notice of prior unregistered instruments, secret liens, or equities; and, on the other hand, although it may contain a clause of warranty, it will have the effect to so charge him with notice, if it purports to convey no more than the right and title of the grantor, to the land."

[5] By the second supplemental petition, which appears in the record of this case, the plaintiff specially denies that he executed a warranty deed to the defendant, and alleged that he only executed a quitclaim deed; but in the event the court should hold that the deed on its face or by its terms amounted to a warranty deed, then the plaintiff further alleged that by agreement between himself and the defendant, Baldwin, the deed was regarded only as a quitclaim, and by the terms of which, as set forth in plaintiff's petition, he only received $200 cash and $300 to be paid, as evidenced by the note sued on. These allegations squarely raised the issue as to the nature of the conveyance executed by plaintiff to the defendant, and, such instrument itself being ambiguous as to just what kind of estate was conveyed, under the above authorities, the court was authorized to hear evidence on the intention of the parties at the time of the execution of the conveyance, and to that end to inquire into and consider the agreement of the parties, as alleged, the understanding between them as to the kind of an estate to be conveyed, the adequacy of the price paid, and other pertinent circumstances, which would shed light upon this disputed point.

[6] There is no statement of facts in the record showing what evidence, if any, was introduced upon these issues. The court in its findings of fact and conclusions of law makes no reference to such matters, nor is there any finding upon such issues of fact, if they were submitted. Ordinarily, where there is no statement of facts in the record, the appellate court, to sustain a judgment, will presume everything to have been proved which was susceptible of legal proof under the pleadings; but this rule is only applicable where there is neither statement of facts nor findings of fact and conclusions of law by the court, and it is not applicable where the findings of fact and conclusions of law were filed below and duly excepted to, since the law authorizes an appeal from such findings alone, and generally entitles the appellant to have the correctness of the legal conclusions on which the judgment rests tested by the facts stated as their basis. Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 852.

[7] In the instant case, as appears from a recital in the court's findings of fact and conclusions of law, he based his conclusion that the conveyance in dispute was a quitclaim deed upon a mere inspection of the instrument. The appellant duly excepted to such conclusion, and under the third assignment of error attacks the judgment of the court in that respect. This necessarily requires an analysis of the language used in said deed. The deed on its face undertakes to convey to Jacob Baldwin the *land itself*, instead of the "right, title, and interest" of the grantor. In that respect it reads:

"Know all men by these presents, that I, Tom L. Drew, of the county of Polk and state of Texas, for and in consideration of the sum of $200 cash to me in hand paid and the further sum of $300 to be paid as hereinafter recited by Jacob Baldwin, * * * have granted, sold, conveyed, and quitclaimed, and by these presents do grant, sell, convey, and quitclaim, unto said Jacob Baldwin * * * 1,579 acres of land [describing it]."

There is a further provision in the premises of the deed which tends to emphasize an intention of the parties (if we rely upon the language alone) to convey the land, instead of the title thereto, which reads as follows:

"It being understood that the intention of this instrument is to convey to the grantee all the land in either of the two leagues above mentioned, which was at any time owned or claimed or stood in the name of D. D. Moore, no matter what the description by metes and bounds may be."

A reference to the language of the grantor in the warranty clause shows the language used by the grantor to be:

"And I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend all and singular the said premises [instead of 'all his right, title, interest and claim in and to said premises'] unto the said Jacob Baldwin," etc.

The only word or words appearing in the express language of this deed, which can in themselves be relied upon to take it out of the ordinary and prescribed form for a fee-simple conveyance of the land (article 1107, Vernon's Sayles' Tex. Civ. St.) is the addition of the word "quitclaim" in the granting clause. In the case of Richardson et al. v. Levi et al., 67 Tex. 359, 3 S. W. 445, the court was called upon to determine the character of the following deed—that it is to say, whether the deed on its face was a quitclaim or a conveyance of the land itself—to wit:

"Know all men that I, James Park, of Williamson county, state of Tennessee, for the sum of $200, received to my full satisfaction, of John C. Moody, of Victoria county, in the state of Texas, do by these presents grant, bargain, sell, demise, release, and forever quitclaim unto the said Moody, his heirs and assigns, the following lots of land situated and being in the town of Victoria, county of Victoria, and state of Texas, and known upon the map, and according to the plat of said town, as building lots, Nos. 1, 2, 3, and 4, in block 131, range 9. Witness my hand and scroll for seal this 21st day of July, A. D. 1858."

Referring to this deed, Judge Willie, speaking for the court, said:

"The deed from Park to Moody does not purport on its face to convey merely the right and title of Park to the land, but the land itself. It is true that it uses the word 'quitclaim' in connection with other words by which title may be passed under a deed of conveyance; but we do not think this word restricts the conveyance in any manner whatever. The words used in the ordinary form of quitclaim at common law are 'remise, release, and forever quitclaim all the right, title, and interest' of the party making the deed. The use, in addition, of other words, such as 'give, grant, bargain, and sell,' would not change the character of the conveyance, if the interest sold was still described as the 'right and

title' of the grantor. It would still be a conveyance of that interest, and not of the land described in the deed; but each of the words of conveyance found in deeds which purport to convey land, and not the vendor's title had at common law its own signification and legal effect. The word 'give' was used in conveying a fee tail; the word 'grant' to convey an incorporeal hereditament; the term 'bargain and sell' evidenced contract to convey which made the bargainer to hold for the use of the bargainee, and the statute of uses vested the title in the usee. A release was used only when the releasee was in possession, and releasor conveyed to him his own title. The signification of these terms has been somewhat modified, and in America, at least, the words 'grant' or 'bargain and sell' may convey fee-simple title to any species of property. * * * It is clear, therefore, that the use of the word 'quitclaim' in the present deed did not make it any the less a conveyance of the lot in controversy, or restrict it so as to make it *upon its face* convey no more than the interest of the grantor in the property."

[8] While the recitals in the instant deed of a purchase price of only $500 for 1,579 acres of land may, under proof, be determined an inadequate consideration, and therefore be considered as a circumstance showing, along with other evidence that may be introduced on the subject, the intention of the parties, in determining the nature of the conveyance, still this court would not be authorized in taking judicial notice that $500, recited in said deed as the purchase price for the 1,579 acres of land, was an inadequate price. We therefore cannot agree that this deed on its face, and based upon the facts as stated by the court in his findings of fact and conclusions of law, is a quitclaim deed, and therefore this cause will be reversed and remanded for a new trial.

We have examined the other assignments of error contained in appellant's brief, and, finding no merit in them, they are overruled. Case reversed and remanded for new trial.