**SHELL OIL COMPANY, a corporation,**
**Plaintiff,**

v.

**C. P. McKNIGHT and H. H. Green,**
**Defendants.**

**Civ. A. No. 2821.**

United States District Court
E. D. Texas,
Tyler Division.

April 27, 1961.

R. H. Whilden, W. G. Winters, Jr., Dan
A. Bruce, Houston, Tex., for plaintiff.

Murph Wilson, William M. Steger, Tyler, Tex., for defendants.

SHEEHY, Chief Judge.

In this action, which was filed on August 31, 1960, Plaintiff is seeking to recover title to and possession of the oil, gas and mineral leasehold estate in a tract of land containing 55.9 acres located in the Hazard Anderson Survey in Wood County, Texas, being the land described in a deed from Mrs. Tollie C. Smith to Mrs. Julia Smith Dierks, dated May 25, 1953, and recorded in Volume 377, page 507 of the Deed Records of Wood County, Texas, and to quiet its title to said leasehold estate against any and all claims of any and every kind or character asserted or which may be asserted by the Defendants. The Defendants admit that the Plaintiff owns and is entitled to the possession of said leasehold estate in all horizons at and below 6500

feet from the surface of said tract but allege and contend that they own and are entitled to the possession of said oil, gas and mineral leasehold estate in all horizons above 6500 feet below the surface of said tract. In that connection Defendants allege and contend that although the legal title to the entire oil, gas and mineral leasehold estate in and under said tract is in the Plaintiff, the Plaintiff holds title to said leasehold estate in all horizons above 6500 feet below the surface of said tract under a constructive trust in favor of them, and that they have the equitable title to said leasehold estate in all horizons above 6500 feet below the surface of said tract. In the first count of their counterclaim the Defendants seek to have impressed on the leasehold estate in all horizons above 6500 feet below the surface of the tract in question a constructive trust in their favor and to have judgment entered setting forth and vesting in them title to such leasehold estate in the horizons above 6500 feet below the surface. In the second count of their counterclaim, which is alternative to count one, Defendants seek to obtain an adjudication that the claims of the Plaintiff and the instruments under which it claims as to the rights from the surface down to 6500 feet constitute clouds on Defendants' title to such rights, the removal of such clouds and an adjudication of title in Defendants to such rights under an oil and gas lease dated July 14, 1952, which lease will be hereinafter more particularly described, and to continue the term of such lease for 101 days after removal of the clouds and so long thereafter as oil or gas is produced from the land.

The real question for determination in this case is whether the Plaintiff or the Defendants own and are entitled to the possession of the oil, gas and mineral leasehold estate in and under the 55.9 acre tract of land in question above 6500 feet below the surface of said tract.

The pertinent facts as admitted and stipulated by the parties and as found by the Court are as hereinafter stated.

Plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the State of New York and with a permit authorizing it to do business in the State of Texas. The Defendants, and each of them, are residents and citizens of Wood County, Texas. The amount in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00.

For approximately twenty years prior to April 1957 there was a very close relationship between the Plaintiff and the Defendant, McKnight, with each having faith in and trust of the other. During that period of time McKnight, acting as a lease broker for Plaintiff, acquired many oil, gas and mineral leases and performed other services for and on behalf of Plaintiff in various areas but more particularly in Wood County, Texas. He at all times gave Plaintiff first call on his services and in areas where Plaintiff was interested he did not take leases for anyone other than Plaintiff. For many years in acquiring leases for Plaintiff he would take the leases in his own name paying the owners the consideration therefor out of his own funds. He would thereafter assign the leases to Plaintiff and receive reimbursement for the money he had expended for said leases. All of his services performed in Wood County, Texas, for Plaintiff were performed without there ever being a contract in writing between him and Plaintiff, although, it was the general policy of Plaintiff to have persons performing services for it such as those being performed by McKnight to enter into a written contract with it.

On August 9, 1946, Mrs. Tollie C. Smith, who is the common source of title of the Plaintiff and the Defendants and who was the then owner of the 55.9 acre tract of land in question, executed and delivered to one R. B. Wherry an oil, gas and mineral lease for a primary term of ten years covering said tract. The lease did not contain the standard gas pooling provisions. By instrument dated Novem-

ber 29, 1950, R. B. Wherry duly assigned said lease to the Defendants.

In 1952, shortly prior to July 14, a representative of the Plaintiff contacted the Defendant, McKnight, and asked whether or not McKnight and Green would sell their lease covering the tract in question to the Plaintiff. McKnight advised Plaintiff's said representative that he, McKnight, would contact his partner, Green, and let Plaintiff's representative know the decision. After contacting Green, McKnight advised Plaintiff's representative that they were not interested in selling the entire lease but would sell the deep rights and reserve the shallow rights. Plaintiff's representative then requested McKnight to send the 1946 lease to him for inspection. McKnight complied with this request, and after Plaintiff's representative had examined the lease, said representative informed McKnight, in effect, that if he would obtain a new lease from Mrs. Smith with a primary term of at least five years, with said lease containing the standard gas pooling provisions, Plaintiff would purchase said new lease from McKnight and Green insofar as said lease covered all horizons at and below 6500 feet below the surface for the sum of $25.00 per acre or the aggregate sum of $1,397.50. McKnight then contacted Mrs. Smith and as a result of negotiations with her obtained from her a new oil, gas and mineral lease covering the tract in question, which lease provided for a primary term of five years and contained the standard gas pooling provisions desired by Plaintiff. This new lease was dated July 14, 1952. By instrument dated August 8, 1952, Defendants duly assigned to Plaintiff said lease dated July 14, 1952, insofar as said lease covered all rights at and below a depth of 6500 feet below the surface. As the consideration for this assignment Plaintiff paid to the Defendants the sum of $1,397.50. All delay rentals provided for in the lease last mentioned were duly paid by Plaintiff on or before their respective due dates so that said lease remained in full force and effect until July 14, 1952. Plaintiff did not bill Defendants for any portion of the delay rentals paid by it as it considered the amount involved would not justify the trouble and effort incident to such billing. In all dealings with Plaintiff and others heretofore mentioned and to be mentioned hereinafter relative to oil, gas and mineral leases covering the 55.9 acre tract of land in question, McKnight was acting not only for himself but as agent for the Defendant, Green, all of which was at all times well known by the Plaintiff.

Sometime in either January or February 1957 Plaintiff's representative contacted McKnight and told McKnight that Plaintiff desired to renew its lease on the tract in question as well as certain other leases it held covering certain other tracts of land in Wood County, Texas, and requested that McKnight acquire the renewal leases. The primary term of each of the leases which Plaintiff desired to so renew was to expire in 1957. The primary term of the lease owned by Plaintiff and the Defendants covering the tract in question, as above set forth, was to expire on July 14, 1957.

Prior to March 1957 McKnight in purchasing leases in Wood County for the account of Plaintiff at the request of Plaintiff had taken said leases in his name and paid for them with his own funds, and upon the completion of the taking of said leases as desired by Plaintiff, McKnight would assign said leases to Plaintiff and Plaintiff would then pay him the amounts that McKnight had paid for the leases and in addition thereto McKnight's commission for purchasing said leases. This practice placed such a financial burden on McKnight that in March 1957 McKnight advised the Plaintiff that he could no longer purchase for Plaintiff leases under such an arrangement. The Plaintiff then authorized McKnight to issue drafts drawn on it in payment of the consideration paid for leases obtained by McKnight for it but at the same time instructed McKnight that he was to take the leases in the name of Plaintiff and not in McKnight's name. In keeping with Plaintiff's re-

quest that McKnight obtain a renewal of its lease on the tract in question, McKnight contacted Mrs. Julia Smith Dierks to whom Mrs. Tollie C. Smith had conveyed the tract of land in question by Warranty Deed dated May 25, 1953, and obtained from the said Mrs. Dierks an oil, gas and mineral lease dated April 4, 1957, covering the tract of land in question. This lease was prepared by McKnight on one of Plaintiff's lease forms and in keeping with Plaintiff's desires and policy when obtaining renewal leases prior to the expiration of the primary term of an existing lease there was added to said lease form what is referred to as Paragraph 17, which paragraph provides as follows:

"This lease shall supersede that certain lease executed by Mrs. Tollie C. Smith, a widow, to C. P. McKnight and H. H. Green, dated July 14, 1952 and recorded in Vol. 380, Page 122, Deed Records, Wood County, Texas, but only as to said lands and the interests therein of those executing this lease.

"It is agreed that the anniversary dates of this lease for the purposes of paragraphs 6 and 14 hereof shall be the delay rental date specified in paragraph 5, and the anniversaries thereof, regardless of the date this lease is made and entered into."

The primary term of this renewal lease was not to expire until July 14, 1962, provided the delay rentals were paid in the time and manner provided for in the lease. Said renewal lease named as the lessee therein the Plaintiff and none other. The consideration paid Mrs. Dierks for this lease was the sum of $1,397.50 which was paid by a draft made payable to Mrs. Dierks and drawn by McKnight on the Plaintiff. The Defendants paid no part of said consideration. The lease obtained from Mrs. Dierks was the first lease obtained by McKnight under the arrangements between Plaintiff and McKnight, above referred to, whereby McKnight was to issue drafts drawn on Plaintiff in payment of the consideration paid for the leases obtained by

McKnight and McKnight was to take said leases in the name of Plaintiff.

At the time McKnight obtained the lease from Mrs. Dierks he felt that he was renewing the lease rights of himself and the Defendant, Green, in all horizons above 6500 feet below the surface as well as the rights of Plaintiff in all horizons at and below 6500 feet below the surface. Approximately four weeks subsequent to his obtaining the lease from Mrs. Dierks, McKnight, in effect, told a Mr. Welch, Plaintiff's representative with whom McKnight had most of his dealings relative to Wood County leases acquired by and for Plaintiff, to bear in mind that the Defendant, Green, and himself owned the shallow rights under the renewal lease covering the tract in question. At that time the said Mr. Welch stated, in effect, "Why didn't you take care of it at the time?", obviously inquiring, in effect, as to why McKnight did not provide for the division of Plaintiff's deep rights and Defendants' shallow rights under said lease at the time the lease was taken from Mrs. Dierks. Thereafter McKnight again discussed the matter of the rights of Defendant, Green, and himself under said lease with Plaintiff's representative, Mr. Welch, and Mr. Welch advised McKnight he would see what he, Welch, could do about it. Several months later McKnight again mentioned the matter to Welch and at that time Welch stated, in effect, that it would take an order from the Queen of Holland to get an assignment to the Defendants of the shallow rights under said lease. Shortly after that Plaintiff instituted this suit.

The Plaintiff did not either at the time its representative contacted McKnight in January or February, 1957, and advised McKnight that Plaintiff desired to renew its lease on the tract in question or at any other time prior to Plaintiff obtaining the oil, gas and mineral lease from Mrs. Julia Smith Dierks dated April 4, 1957, as above set out, advise the Defendant, McKnight, that Plaintiff desired and intended to take such lease as to all

horizons in and under the tract in question.

On August 24, 1960, the Plaintiff contacted Mrs. Dierks and obtained from her an instrument whereby Mrs. Dierks purported to ratify and confirm the oil, gas and mineral lease dated April 4, 1957, above referred to, and purported to lease and let to Plaintiff the land in question on all the terms and conditions contained in said lease dated April 4, 1957, as to all horizons.

No oil or gas wells were drilled or completed on the tract in question prior to August 31, 1960, and no operations as defined in the oil and gas leases covering the tract in question, and above referred to, were conducted on said tract before August 31, 1960, and no oil, gas or other minerals were produced from said lands prior to said date. The two annual delay rentals in the amount of $55.90 each that have become due under the April 4, 1957, lease, above referred to, have been paid timely by the Plaintiff with no part of said delay rentals having been paid by the Defendants.

Do the Defendants own and are they entitled to the possession of the oil, gas and mineral leasehold estate created by the oil, gas and mineral lease executed by Mrs. Julia Smith Dierks on April 4, 1957, above referred to, insofar as same pertains to all horizons above 6500 feet below the surface of the tract in question? The answer to that question depends on whether under all the facts and circumstances in this case as shown by the evidence this Court, sitting as a court of equity, should impress upon said oil, gas and mineral leasehold estate above 6500 feet below the surface a constructive trust in favor of the Defendants and decree that the Plaintiff holds title to such leasehold estate above 6500 feet below the surface in trust for the Defendants.

■ As said by the court in MacDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334, 337, a case in which the court had before it the question of the sufficiency of the evidence to raise a question of fact as to the existence of a relationship of trust and confidence between the plaintiff and the defendant as co-owners of overriding royalties under oil and gas leases so as to entitle the plaintiff to recover a half interest in overriding royalties in connection with a renewal oil, gas and mineral lease obtained by the Defendant in his own name to the plaintiff's exclusion, "This is a suit in equity and in that realm the conduct of parties is judged by refined standards. No rules can be prescribed and no attempt should be made to formulate rules for the measurement of conduct by courts of equity, but that such conduct must be measured by standards exacting the utmost fidelity between the parties is universally recognized."

■ Under the facts and circumstances in this case I find and conclude that as to the oil, gas and mineral leasehold estate in the tract in question from the date of the assignment by Defendants to Plaintiff on August 8, 1952, of the rights under the oil, gas and mineral lease the Defendants had previously obtained from Mrs. Tollie C. Smith on July 14, 1952, as aforesaid, insofar as said lease covered all rights at and below 6500 feet below the surface of the tract in question, up to and including the taking of the lease from Mrs. Julia Smith Dierks dated April 4, 1957, which purported to lease to Plaintiff the oil, gas and mineral estate as to all horizons under the tract in question there existed between the Plaintiff, on the one hand, and the Defendants, on the other hand, a relationship of trust and confidence. That being true, I further find and conclude from the evidence in this case and under the holdings made in MacDonald v. Follett, supra, and Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, that Plaintiff holds title to the oil, gas and mineral estate created by virtue of the oil, gas and mineral lease executed by Mrs. Julia Smith Dierks in favor of Plaintiff on April 4, 1957, above referred to, and the purported ratification of said lease executed by the said Mrs. Dierks on August 24, 1960, above referred to, insofar as said oil, gas and mineral leasehold estate and the ratification thereof pertains to and affects all

horizons above 6500 feet below the surface of the tract in question in trust for the Defendants and that the Defendants have the equitable title to said leasehold estate insofar as same pertains to and affects all horizons above 6500 feet below the surface.

■■ The Plaintiff contends that the Defendants are not entitled to the benefit of a constructive trust because they have not reimbursed or offered to reimburse the Plaintiff for the consideration it paid for the lease dated April 4, 1957, and the two annual delay rentals it has paid under the terms of said lease. It is true that the Defendants, as above set forth, have paid no part of either the consideration paid for said lease or of the annual delay rentals paid by Plaintiffs thereunder. It is further true that the Defendants up to the time of the trial of this case made no offer to pay said consideration and delay rentals or any part thereof. However, it is obvious from the evidence in this case, and I so find, that had Defendants tendered to Plaintiff the full amount of the consideration paid for the lease of April 4, 1957, and the full amount of the annual delay rentals paid by Plaintiff under the terms of said lease, Plaintiff would not have recognized that Defendants owned the oil, gas and mineral leasehold estate insofar as same affects all horizons above 6500 feet below the surface of the tract in question and would not have conveyed or assigned to the Defendants said leasehold estate insofar as same affects all horizons above 6500 feet below the surface. Since neither law nor equity requires a person to do a vain and useless thing the Plaintiff's contention to the effect that the Defendants are not entitled to the benefit of a constructive trust because they have neither reimbursed nor offered to reimburse Plaintiff for any part of the consideration it paid for the lease in question and for the annual delay rentals it has paid thereunder prior to the trial of this case is without merit.

■ Where a constructive trust is declared and the evidence fails to show the party at fault has recouped his costs of acquiring the property that is the subject matter of the constructive trust out of rentals or other proceeds from it, the equitable principle of "fair play" requires that the court as an incident of the judgment make adequate provision for reimbursement. This the Defendants recognize in their brief filed herein on February 17, 1961. The difficulty arises in attempting to determine the amount of the reimbursement to which the Plaintiff is entitled. Although the consideration paid for the April 4, 1957, lease was on the basis of $25.00 per acre, there is no evidence from which it could be fairly determined the amount of that consideration that was attributable to the "shallow rights" under the lease claimed by the Defendants and the amount that was attributable to the "deep rights" under the lease claimed by the Plaintiff. In their brief just referred to the Defendants state:

"It is submitted that a fair and equitable finding would be to require Defendants to pay Plaintiff the sum of $12.50 per acre for the shallow rights, since the testimony shows both horizons were of equal value among the traders on comparable tracts.

"Should the Court decide that this is not an equitable solution, an alternate solution would be to require Defendants to pay Plaintiff the entire sum of $25.00 per acre as reimbursement, since there is no direct testimony on the tract in controversy as to the value of the shallow rights. Defendants hereby state that they stand ready to comply with such a finding by the Court."

Bearing in mind that statement of the Defendants, the fact that the Plaintiff has paid annual delay rentals under the lease of April 4, 1957, in the aggregate amount of $111.80, and that the evidence fails to establish what part of the consideration paid for said lease of April 4, 1957, was attributable to the "shallow rights" and what part of said consideration was attributable to the "deep

rights," I find and conclude that it would be fair and equitable to the Plaintiff as well as to the Defendants to require the Defendants to pay to the Plaintiff by way of reimbursement for the cost to Plaintiff of the lease of April 4, 1957, insofar as same covers all horizons above 6500 feet below the surface the sum of $1,397.50.

The findings and conclusions hereinabove made to the effect that Plaintiff holds title to the oil, gas and mineral estate in question insofar as same affects all horizons above 6500 feet below the surface of the tract in question in trust for the Defendants make it unnecessary to consider and pass on the contentions made by the Defendants in the second count of their counterclaim, which second count was asserted alternative to count one of the counterclaim.

In keeping with the findings and conclusions hereinabove set forth, judgment will be entered as follows:

(a) Declaring and adjudging that as to the oil, gas and mineral leasehold estate in the tract of land in question created by and arising under the oil, gas and mineral lease executed by Mrs. Julia Smith Dierks on April 4, 1957, and hereinabove referred to, and the purported ratification of said lease executed by the said Mrs. Dierks on August 24, 1960, and above referred to, the Plaintiff is the owner of all of the rights, title and interest in and to said leasehold estate insofar as same pertains to and affects all horizons at and below 6500 feet below the surface, and the Plaintiff holds title to said leasehold estate insofar as same pertains to and affects all horizons above 6500 feet below the surface in trust for the Defendants jointly;

(b) Adjudging that the Plaintiff recover from the Defendants title to and possession of the leasehold estate, above referred to in subparagraph (a) next above, insofar as same pertains to and affects all horizons at and below 6500 feet from the surface;

(c) Ordering and directing that upon the Defendants paying to the Plaintiff the sum of $1,397.50 Plaintiff execute and deliver to the Defendants an appropriate instrument in writing duly conveying, assigning and transferring to the Defendants, jointly, the leasehold estate, above referred to in subparagraph (a) above, insofar as said leasehold estate pertains to all horizons above 6500 feet below the surface; and

(d) Adjudging all costs of court incurred herein against the Plaintiff.

This Memorandum Decision will constitute the Findings of Fact and Conclusions of Law herein as authorized by Rule 52, F.R.Civ.P., 28 U.S.C.A.