Terri L. ANDERSON, Appellant,

v.

Cleo GILLILAND, Appellee.

No. 20698.

Court of Civil Appeals of Texas, Dallas.

Aug. 28, 1981.

Rehearing Denied Sept. 24, 1981.

Tom S. McCorkle, Dallas, for appellant.

Carl Luna, Garland, for appellee.

Before AKIN, CARVER and STEPHENS, JJ.

AKIN, Justice.

■■ This is an appeal from an order of the Probate Court refusing to order an independent executrix of the estate of her deceased husband to include as an asset of his estate the enhanced value of her separate property due to the expenditure of community funds. The sole question presented by this appeal is whether a quitclaim deed executed by the grantor to his wife was effective to convey his future equitable right of reimbursement for his one-half of community funds expended on his wife's separate property. We hold that the quitclaim deed could only transfer whatever interest the grantor had in the property at the time the deed was executed and delivered. Because an equitable right of reimbursement is not a right, title, or interest in real estate, the quitclaim deed conveyed nothing. Accordingly, the order of the Probate Court is reversed and this matter remanded to the Probate Court with instructions to include as an asset of the estate the husband's equitable right of reimbursement for community funds expended in enhancing the wife's separate property.

This dispute between Terri L. Anderson, the decedent's daughter, and Cleo Gilliland, his widow, arose when the widow refused to include as an asset of her deceased husband's estate his right of reimbursement for community funds expended on the widow's separate property. His daughter was the residual beneficiary under his will and was entitled to have the funds representing his right to reimbursement included as an asset of his estate unless the earlier quitclaim deed transferred this right. The daughter argues that the quitclaim deed did not transfer the decedent's equitable right to reimbursement for the enhancement of the wife's separate property from community funds. Consequently, she contends that she is entitled to her deceased father's right to reimbursement for the enhancement of the widow's separate property. We agree.

In *Burton v. Bell,* 380 S.W.2d 561, 564–65 (Tex.1964), the supreme court specifically stated:

The charge of equity which one estate has against the opposite estate for reimbursement of all funds spent in enhancing the value of such opposite estate is only a claim for money and return of funds and *not a right, title or interest in the land. Curtis v. Poland,* 66 Tex. 511, 2 S.W. 39 (1886); *Furrh v. Winston,* 66 Tex. 521, 1 S.W. 527 (1886); *Schmidt v. Huppman,* 73 Tex. 112, 11 S.W. 175 (1889); *Hayworth v. Williams,* 102 Tex. 308, 116 S.W. 43 (1909); *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620, 624 (1935). [Emphasis added.]

The supreme court reasoned that community funds spent upon separate property gave the community no right, title, or interest in the land. That court also noted that no *matured* right of equitable reimbursement for community expenditures on separate property arose until dissolution of the community. It follows, therefore, that the quitclaim deed at the time of execution and delivery conveyed nothing to the wife because the husband-grantor had neither a matured right of equitable reimbursement nor a right, title or interest to the land at that time. *See Lott v. Lott,* 370 S.W.2d 463, 465 (Tex.1963). (A quitclaim deed transfers whatever present interest grantor

had in land.) *See also Harrison v. Boring & Kennard,* 44 Tex. 255, 261–62 (1875) (quitclaim deed conveys no more than present interest of grantor, and "does not operate to pass an interest such as may afterwards vest.").

Gilliland contends, and the dissent agrees, that we should look to extrinsic evidence of the circumstances surrounding the execution of the deed, such as testimony of the widow and the contents of the grantor's will, to determine the intention of the grantor in executing the unambiguous quitclaim deed. This we cannot do. Without question that the intent of an unambiguous deed must be determined from the language used.

 Where the terms of a deed are clear and unambiguous, parol evidence is inadmissible to vary or contravene its terms or to show the construction placed thereon by the parties at the time or subsequent to its execution. *Henry v. Phillips,* 105 Tex. 459, 151 S.W. 533, 538 (1912); *Soell v. Haddon,* 85 Tex. 182, 19 S.W. 1087 (1892). Thus, we hold that the testimony of the widow, the contents of the grantor's will, and the closeness of the execution of the deed and the will, are all inadmissible on the question of the grantor's intent in executing the quitclaim deed.

In this respect, we note that the cases cited in the dissenting opinion are consistent with our holding in that those courts looked to the language of the deed to determine the intent of the grantor. *E. g. Borroum v. Culmell,* 90 Tex. 93, 37 S.W. 313, 314 (1896). Other cases cited by the dissent, such as *Baldwin v. Drew,* 180 S.W. 614 (Tex.Civ.App.—Beaumont 1915, no writ), all concern situations where the deed was ambiguous and where the court had to determine whether the deed was a warranty deed or merely a quitclaim deed. In those situations, a court is justified in looking to surrounding circumstances and to other extrinsic evidence in construing a deed, the language of which is otherwise uncertain.

Because the right of community reimbursement is only an equitable claim for money upon dissolution of the community, and because the quitclaim deed contained no language which may be read as a waiver or a conveyance of this future unmatured right, the equitable right to reimbursement belonged to the husband until his death and passed to his residuary beneficiary under his will. Accordingly, the order of the probate court is reversed and remanded with instructions to the probate court to determine the amount of reimbursement due the estate and to include that sum in the assets of decedent's estate.

Reversed and remanded.

STEPHENS, Justice, dissenting.

I respectfully dissent. The majority concludes that a quitclaim deed executed by a decedent in favor of his wife, four months before his death, purporting to convey all of his right, title and interest in a certain tract of his wife's separate realty, was ineffective to convey to her his one-half interest in the community estate's equitable right to reimbursement for community funds expended to improve her separate property during the marriage. I disagree with this conclusion.

The majority strictly construes the form and language of the deed, in light of generally recognized principles of law, as an attempted conveyance of a present interest in the described tract of land, without giving consideration to the intention of the grantor. In construing the effect of a quitclaim deed, the intention of the parties, together with pertinent circumstances surrounding the execution of the deed, are admissible to determine whether the conveyance is a transfer of the land itself or mere chance for title. *Baldwin v. Drew,* 180 S.W. 614 (Tex.Civ.App.—Beaumont 1915, no writ). A deed may be read and construed in the light of the surrounding circumstances under which it was executed, and no matter how imperfect title may be in the grantor, the question to be resolved in giving effect to the instrument is the intention of the parties. *Carleton v. Lombardi,* 81 Tex. 355, 16 S.W. 1081 (1891); *Taylor v. Harrison,* 47 Tex. 454 (1877); *Harrison v. Boring,* 44 Tex. 255 (1875); *Culmell v. Borroum,* 13 Tex.Civ. App. 458, 35 S.W. 942 (Tex.Civ.App.1896,

error refused), 90 Tex. 93, 37 S.W. 313 (1896).

A careful review of the circumstances surrounding the execution of the deed in this case is necessary to ascertain the grantor's intent and thus arrive at a logical and just construction. I do not believe this precise question has been decided in Texas. First, I would readily agree with the majority, that on November 20, 1978, Mr. Gilliland, grantor, owned no present legal right, title or interest in the separate realty of Mrs. Gilliland, yet the circumstances show that he believed he owned some kind of right, title or interest. It is undisputed that the property right at issue in this case is Mr. Gilliland's one-half interest in an equitable right of reimbursement in favor of the community estate, arising out of improvements placed upon Mrs. Gilliland's separate realty by the community estate during the marriage. This equitable right of reimbursement, although characterized by the majority as a future equitable right, is in actuality a presently accrued, but unmatured property right, which matures and becomes enforceable upon dissolution of the marriage, by either divorce or death of one of the parties.

The thrust of the majority opinion is in its strict application of the parol evidence rule to the execution of the unambiguous quitclaim deed. There is no question the general rule provides that parol evidence is inadmissible to vary or contravene the terms of an unambiguous deed, but it is necessary to note that there are equitable as well as legal exceptions. In *Bradshaw v. McDonald*, 147 Tex. 455, 216 S.W.2d 972 (1949), a deed, absolute on its face, is shown by extrinsic evidence to be in fact a mortgage, with no requirement that fraud, accident or mistake be pled. In *Griffin v. Robertson*, 592 S.W.2d 31 (Tex.Civ.App.—Texarkana 1979, no writ) an unambiguous joint survivorship agreement is shown by extrinsic evidence to be a parol trust for the benefit of a child's education, with no requirement that fraud, accident or mistake be pled. I believe the unique facts of this case require an exception to the general rule.

With this prelude, we examine the facts and circumstances surrounding Mr. Gilliland's execution of the deed. The record reveals a marriage of about fourteen years. It is silent as to any discord or conflict between the spouses. Soon after the marriage, they constructed a house on separate realty of Mrs. Gilliland. In 1968, Mr. Gilliland joined Mrs. Gilliland in the execution of a note to Garland Federal Savings and Loan Association, in the sum of $13,000.00, together with interest, secured by the realty in question. The proceeds of this loan were used in constructing their home. The note was paid in monthly installments during the marriage, and is still an outstanding debt on the property. On November 20, 1978, only four months before Mr. Gilliland died, he executed a "form" quitclaim deed to the property in question in favor of Mrs. Gilliland. On the next day, November 21, 1978, he executed his last will and testament, which has been admitted to probate. The deed, executed only one day before his will, and only four months before Mr. Gilliland's death, favored Mrs. Gilliland with all of his right, title and interest, to whatever extent that right, title and interest may be, to the realty together with its appurtenances. His will favored her with all of his savings accounts, certificates of deposit, checking accounts, all cash monies, all motor vehicles, boats, motors and trailers, and named her as independent executrix. His will left two of his daughters and one son, $1.00 each, and the rest and residue of his estate, to his daughter, Mrs. Anderson. An inventory and appraisement of his estate was filed in the probate court by Mrs. Gilliland, as independent executrix, and although certain values were disputed, we find no significant complaint other than the contention that decedent's right of reimbursement for the value of the enhancement of Mrs. Gilliland's separate realty should have been included as an asset of the estate. The inventory and appraisement, as filed, sets a total value of the decedent's estate, excluding the enhanced value of the realty, at $3,875.00. Mrs. Anderson contends that the enhanced value of the realty

is $54,000, and that she is entitled to one-half, or $27,000.00.

When Mrs. Gilliland was asked during trial if she had had any conversations with Mr. Gilliland and the attorney at the time of the execution of the deed, she answered:

> Well, he was, uh,—knew that he was in, uh, not good health, so he wanted me to have a clear title to the house and the land so I would be taken care of if something should happen to him.

From all of the foregoing facts, it seems clear to me that Mr. Gilliland intended for Mrs. Gilliland to have the substantial share of his estate, reserving an incidental share for Mrs. Anderson. Had he not believed that he owned some interest in the land, his act in executing the deed would have been in vain. Neither law nor equity requires a person to do a vain or useless thing. *Shell Oil Co. v. McKnight,* 204 F.Supp. 159, (E.D. Tex.1961), *affirmed,* 302 F.2d 731, (5th Cir. 1962), *cert. denied,* 372 U.S. 968, 83 S.Ct. 1093, 10 L.Ed.2d 131 (1963). Thus it seems inconsistent to me that he would, on the one hand, transfer all of his right in the land to Mrs. Gilliland, together with his automobiles, boats, motors and all *bank accounts and cash monies,* and then on the other hand transfer a *claim for money* against Mrs. Gilliland, to his daughter. In considering his intention, we especially note that the construction urged by Mrs. Anderson would result in her receiving, according to the inventory and appraisement, approximately seven times more from his estate than Mrs. Gilliland would receive.

The deed in question contained the following recitations:

> I, Lawrence Gilliland ... for and in consideration of Ten & no/100 ($10.00) and other good and valuable consideration to me in hand paid by my wife, Cleo Gilliland, ... do, by these presents, BARGAIN, SELL, RELEASE, AND FOREVER QUIT CLAIM ... all of my right title and interest in and to that certain tract ...

The majority also reaches its conclusion in reliance on the language expressed by our supreme court in *Burton v. Bell,* 380 S.W.2d 561 (Tex.1964), which is factually distinguishable from this case. *Burton v. Bell* requires neither the construction of any document of conveyance of any property right, nor the intent of a grantor, because there was no such document. Mrs. Bell, in the settlement of her deceased husband's estate, contends that the advancement of her separate monies, during the marriage, for the improvement of Mr. Bell's separate realty, in and of itself, absent any instrument of conveyance, created for her, a one-half undivided interest in Mr. Bell's separate realty. The court rejected her contention, holding that she had neither equitable nor legal title to the property in question, citing, *Rice v. Rice,* 21 Tex. 58 (1858); *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620, 624 (1935); *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114 (1921); *Allen v. Allen,* 101 Tex. 362, 107 S.W. 528 (1908); *Furrh v. Winston,* 66 Tex. 521, 1 S.W. 527, 529 (1886). The *Bell* case, consistent with established law, recognized that upon dissolution of the marriage, Mrs. Bell was entitled to her claim for reimbursement. The court held that a claim for reimbursement, being a claim for money only, did not ripen into a right, title or interest in the land. It did not hold, however, that a quitclaim deed, when its intent is determined, can in no circumstance be construed as a conveyance or release of some equitable right of the grantor in the property or some claim against the owner. In construing a quitclaim deed, the intention of the parties is the controlling consideration. This principle of law has long been recognized and is not inconsistent with my analysis of this case.

The majority further cites *Lott v. Lott,* 370 S.W.2d 463, (Tex.1963), for the proposition that a quitclaim deed only conveys a presently owned interest in the land. This, again, is a generally recognized rule of law, not inconsistent with this dissent.

Mr. Justice Stayton as early as 1886, in the case of *Curtis v. Poland,* 66 Tex. 511, 2 S.W. 39 (1886), recognized that the construction of language in a conveyance depends upon the intent of the grantor, and

while circumstances of each case differ, he concluded that an equitable claim for reimbursement can be conveyed by a quitclaim deed, provided it is the intent of the grantor. In that case, Justice Stayton wrote:

It is unnecessary in this case to consider what would be the right of the appellant had she ... acquired the equitable claim which her father may have had growing out of the fact that he may have made such improvements after the death of his wife, on the common property; for, from the record before us, we are of the opinion that the appellant did not acquire, through the deed from her father, any equitable claim which he may have had by reason of the fact that he made improvements on the lot after the death of his wife. It is evident that one tenant in common cannot make the fact that he has made improvements on the common property to operate as a conveyance to him of any right, title, or interest in or to the land on which such improvement is made. Improvements so made may confer upon the co-tenant maker an equity which a court of equity will protect by setting apart to him, in partition, the part of the common property on which the improvement is made, if this can be done without detriment to the other co-tenants; or, if this cannot be done, the court will protect him, in proper cases, by awarding compensation for improvements beneficial to all, or will consider the value of improvements so made in the adjustment of equities growing out of the fact that the co-tenant so improving has received and become accountable for rents; but such equitable claim is neither a right, title, nor interest in or to the land so improved. That such an equitable claim might be assigned we have no doubt, and that it would pass by a warranty deed purporting to convey land so improved, or even by a quitclaim deed which in terms purports to convey the improvements, is most probably true. Such a claim for improvements is rather an equitable charge upon the land improved than a right, title, or interest in or to it; and it has sometimes been declared that a co-tenant has a lien to secure compensation to him for necessary or proper improvements made by him on the common property.... There is nothing in the deed through which the appellant claims to indicate that it was the intention of her father to assign to her any claim he may have had growing out of the fact that he may have made improvements on the lot. It is unnecessary in this opinion to consider the character of improvements made by a tenant in common, and the circumstances under which they must be made to entitle such person to compensation, directly or indirectly, therefor. No such right exists in all cases, but each case must depend upon its facts.

The court held that under that record there was no evidence of the grantor's intent, and thus no equitable right passed by the execution of the deed.

I conclude, from the facts of this case as shown by the record, that despite the absence of language in the deed describing the property right conveyed as his equitable right of reimbursement, the only logical conclusion to draw is that on November 20, 1978, when Mr. Gilliland executed the quitclaim deed to Mrs. Gilliland, he intended to convey to her any claim, legal or equitable, present or contingent, which he or anyone claiming under him might have against Mrs. Gilliland, or her property, arising from the advancement of community funds during their marriage, and that the effect of the instrument executed was to release and forever extinguish such claim.

To hold otherwise and apply the strict construction afforded the deed by the majority, under the facts of this case, is to conclude that the words "right, title, and interest," as here used, were clearly understood by Mr. Gilliland, a layman, in their strict legal meaning. I find this conclusion both illogical and unjust.

I would affirm the trial court.